

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES SCOTT #124522
     Plaintiff,

vs.

BARRY LAMB, et al.,
     Defendants.

Case No: 16-13462

Hon. Bernard A. Friedman

Magistrate Anthony P. Patti

FILED
FEB 22 2017
CLERK'S OFFICE
U.S. DISTRICT COURT

---

James Scott #124522
Plaintiff, Pro Se
G. Robert Cotton Corr. Facility
Jackson, Michigan 49201-8877
(517) 780-5147 ext. 5196

David Hoort (P28492)
Attorney for MDOC Defendants
MI Dep't of Attorney General
Civil Litigation, Employment &
Election Division
P.O. Box 30736
Lansing, MI 48909
(517) 373-6434

---

PLAINTIFF'S RESPONSE IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT


BRIEF IN SUPPORT OF
PLAINTIFF'S RESPONSE IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT


WITH EXHIBITS 1-12


POOR QUALITY ORIGINALS

James Scott #124522
Plaintiff, Pro se
G. Robert Cotton Corr. Facility
Jackson, Michigan 49201-8877

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES SCOTT #124522
      Plaintiff,

Case No: 16-13462

Hon. Bernard A. Friedman

vs.

Magistrate Anthony P. Patti

BARRY LAMB, et al.,
      Defendants.

---

James Scott #124522
Plaintiff, Pro Se
G. Robert Cotton Corr. Facility
Jackson, Michigan 49201-8877
(517) 780-5147 ext. 5196

David Hoort (P28492)
Attorney for MDOC Defendants
MI Dep't of Attorney General
Civil Litigation, Employment &
Election Division
P.O. Box 30736
Lansing, MI 48909
(517) 373-6434

---

## PLAINTIFF'S RESPONSE IN OPPOSITION TO
## MOTION FOR SUMMARY JUDGMENT

    Plaintiff James Scott, having received the Courts order requiring a response, submits his response in opposition to Defendants' Barry Lamb and Mark Roark's motion for summary judgment.

    Plaintiff ask the Court to deny the Motion for the reasons set forth in Plaintiff's accompanying brief.

                        Respectfully submitted,

February 17, 2017

                        James Scott #124522
                        Plaintiff, Pro se
                        G. Robert Cotton Corr. Facility
                        Jackson, Michigan 49201-8877
                        (517) 780-5147 ext. 5196

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES SCOTT #124522
       Plaintiff,

                         Case No: 16-13462

                         Hon. Bernard A. Friedman

vs.                     Magistrate Anthony P. Patti

BARRY LAMB, et al.,
       Defendants.

---

James Scott #124522
Plaintiff, Pro Se
G. Robert Cotton Corr. Facility
Jackson, Michigan 49201-8877
(517) 780-5147 ext. 5196

David Hoort (P28492)
Attorney for MDOC Defendants
MI Dep't of Attorney General
Civil Litigation, Employment &
Election Division
P.O. Box 30736
Lansing, MI 48909
(517) 373-6434

---

BRIEF IN SUPPORT OF
PLAINTIFF'S RESPONSE IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT

## CONCISE STATEMENT OF ISSUES PRESENTED

I.     This Court should deny summary judgment with regards to any allegations that Plaintiff has not properly exhausted his administrative remedies through all steps of the grievance process before filing his complaint under 42 U.S.C. § 1983 as Plaintiff has exhausted his administrative remedies.

II.    This Court should deny the Defendants' request to have Plaintiffs claims against Defendant Lamb dismissed under Fed.R.Civ.P. 12(b)(6) because the complaint did not fail to state a claim upon which relief can be granted.

III.   This Court should deny summary judgment on the basis of governmental immunity to the government employees that are sued in their individual capacities and their conduct have violated clearly established statutory and constitutional rights of which a reasonable person would have known.

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

Woodford v. Ngo, 548 U.S. 81 (2006)(Exhaustion requires "proper exhaustion," using all steps that the agency holds out, and doing so properly). "[T]he exhaustion requirement is satisfied where prison officials fail to timely respond to an inmates' written grievance." Boyd v. Corrections Corp. of America, 380 F.3d 989, 996 (6th Cir. 2004).

In Thaddeus-X v. Blatter, 175 F.3d 378, 394 (6th Cir. 1999) A retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two-that is, the adverse action was motivated at least in part by the plaintiffs protected conduct.

The Sixth Circuit held in Pilgrim v. Littlefield, 92 F.3d 413, 416 (6th Cir. 1996), For a prisoner to prevail on an access to the courts claim the prisoner "must plead and prove prejudice stemming from the asserted violation....Plaintiff "must] allege [a] litigation-related determent." Johnson v. Avery, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969).

Qualified governmental immunity for state employees focuses on the "objective reasonableness" of the official's conduct. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The two inquirie in a qualified immunity analysis are: (1) did the defendant violate a constitutional right, and (2) was the right clearly established to the extent that a reasonable person in defendant's position would know that the conduct complained of was unlawful. Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); Pearson v. Callahan, 555 U.S. 223, 129 S.Ct. 808, 812, 172 L.Ed.2d 565 (2009).

Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242.

ARGUMENTS

I.     **PLAINTIFF HAS PROPERLY EXHAUSTED HIS ADMINISTRATIVE REMEDIES**

The administrative process applicable to Plaintiff's claims is governed by MDOC Policy Directive 03.02.130 "Prisoner/Parolee Grievances" as stated within Defendants' (Exhibit 2) which is adopted here by reference from their motion for summary judgment. The Defendants have put forth a long discussion concerning the exhaustion process of the MDOC's grievance procedure; the Defendants' have quoted every possible way it could be violated, and simply placed Plaintiff therein if though he violated it all; including, the class III misconduct which was exhausted. However, the Defendands' have stated on page 4, of their motion for summary judgment that "The PLRA attempts to eliminate unwarranted federal court interference with the administration of prisons, and thereby "affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Porer, 534 U.S. at 525." Yet, on page 10 of the same motion, the Defendants' are asking this Court to over look any waived of rights they may have committed, by stating "This Court should not just conclude that individual Defendants waived the right to object to Plaintiffs non-compliance with the exhaustion procedural requirements. See United States v. Olano, 507 U.S. 725, 733 (1993). Plaintiffs is in compliance with the exhaustion procedural requirements. Plaintiff nevertheless, shall address their arguments. The Defendants have shown that Plaintiff have appealed through all three steps of the grievance procedure by their own exhibit 1. The Defendants' have suggested that Plaintiff may have somehow improperly filed his

1

grievance, and on page 9 of their motion for summary judgment stated "An improperly filed grievance, even though appealed through all steps of a grievance procedure, does not fulfill the exhaustion requirement. Woodford, 548 U.S. at 97. Threet v. Phillips, 14-cv-13345, 2016 WL374121, at *3 (E.D. Mich. Feb. 1, 2016)." There is nothing improperly filed concerning Plaintiff's grievances.

Because Threet v. Phillips, was decided by the Hon. Bernard A. Friedman, Plaintiff shall restate his quote of the Policy Directive 03.02.130.

> "A prisoner must first "attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control[,]" Id. ¶ P. If the issue is not resolved to the prisoner's satisfaction, he must then file a Step I grievance within five business days after attempting to resolve the issue with appropriate staff. Id. ¶ P. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must file a Step II grievance. Id. ¶ BB. Finally, if the prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must file a Step III grievance. Id. ¶ FF. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved in writing by the Grievance Coordinator at Step I and/or Step II." Id. ¶ S.
>
> MDOC policy also states that "[i]formation provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, time, place, and names of all those involved in the issue being grieved are to be included." Id. ¶ R (emphasis in original). Grievances may be rejected if they are vague, duplicative or issues raised in other grievances filed by the grievant, or untimely. Id. ¶ G. However, a "grievance shall not be rejected if there is a valid reason for the delay, e.g., transfer." Id. ¶ G.4."

The above stated process is the exact procedure which was followed by Plaintiff.

The Defendants alleged in their motion for summary judgment at page 9, that "Plaintiff's January 25, 2016 claims against Defendants Lamb (Compl. R. 1, ¶¶ 7-

2

8, PageID,2-3) and Roark (Compl. R. 1, ¶ 9, PageID.3) should be dismissed because Plaintiff did not attempt to resolve the grievance informally with either of the affected parties (Grievance JCF 1601022119C. Exhibit 1) as required by MDOC Policy Directive."

The purpose of notice pleading is to "giv[e] the opposing party fair notice of the nature and basis or grounds of" the claim. 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1215 (3d ed. 2004). The Supreme Court rejected a similar argument in Jones v. Beck, 549 U.S. ,127 S.Ct. 910, 166 L.Ed.2d 798 (2007). The Defendants' have simply failed to acknowledge that FRCP R. 8(a)(2), only requires "a short and plain statement of the claim showing that the pleader is entitled to relief."

The record reveals that Plaintiff did seek to resolve the grievance informally with Defendant Roark first. By Defendant Roark's own words within his affidavit at ¶ 6. "In this case Plaintiff complained to me that Defendant Lamb was tearing up documents and property in his cell, and wanted me to stop him. I told him Defendant Lamb was just doing his job." When Defendant Roark told Plaintiff that he was not going to stop Defendant Lamb, Plaintiff informed Defendant Roark that if he was not going to stop him, Plaintiff was going to write a grievance on him for failure to stop him from tearing up his property, and Defendant Roark said go a head. See Exhibit 5, ¶ 2. The record reveals at ¶ 10., of the complaint that Plaintiff attempted to resolve the grievance orally with Defendant Lamb as well, "he was asked by Plaintiff why he had tore up his books and documents and Defendant Lamb told him again, that he should find something else to do other then filing lawsuits against MDOC's officials." Plaintiff told Defendant Lamb that he would be writing a grievance on him for destroying his legal property. See JCF 16 01 022 119C, and exhibit 5., at ¶ 3. The Grievance were taken through all three Steps and there were nothing improper

3

about the way in which they were processed. The Defendants' argument concerning the failure of Plaintiff to state within the complaint that he attempted to resolve the grievance issue orally, is simply without merit. The circumstances of Plaintiff and those cited by the Defendants' in Jarrett v. Smith, et al., 2:13-cv-14516 2014 U.S. Dist. LEXIS 41585 at *4 "This grievance was rejected for failure to talk to the staff person most directly involved with this issue," is without merit. As demonstrated above, Plaintiff did talk with both of the staff involved with the issue.

Defendants' argument is still without merit in attempting to argue that Plaintiff did not exhaust his retaliation claim against Defendant Lamb because he failed to raise retaliation all the way through the misconduct process. Plaintiff did complain that the minor misconduct ticket was in retaliation.

In putting forth an argument to show the Defendants' erroneous conclusion, Plaintiff states that the misconduct ticket was in fact properly exhausted. See exhibit 1.

On May 27, 2016 Defendant Lamb wrote a minor misconduct report against Plaintiff for having a padlock with scratches on it, some cardboard material, and some state issued gloves.

On June 3, 2016 Hearing officer J. Pazitka found Plaintiff guilty in part of the minor misconduct, holding that the padlock reveals an area where it has been completely scratched off. Prisoner could not provide any disbursement for it. The item that is being worked is made of cardboard material. The inside is made out of pop tart wrappers. It is not hobby craft material. It cannot be determined if inmate is in excess of state issue gloves. The report only indicate excess gloves. Prisoner is given the benifit of the doubt and gloves were returned at hearing.

On June 3, 2016 Plaintiff received the appeal form and appealed to the

4

Assist. Deputy Warden, Michelle Floyd. Plaintiff pointed out in the appeal that he had offered the property sheet for his lock, but that the hearing officer only wanted the disbursement for a 20 year old lock. Plaintiff pointed out that he had presented his hobby craft card to show that the material was on his hobby craft card and the hearing officer did not check with the hobby craft director to see if the material were approved. Plaintiff pointed out that he had officer Arnold, the unit officer to inform the hearing officer of the retaliatory actions Defendant Lamb had taken against him, and how Defendant Lamb had torn up his room for the second time in retaliation for filing complaints against MDOC staff members. Assist. Deputy Warden, Floyd failed to adjudicate an appeal of the misconduct ticket in which the evidence therein clearly showed that the decision of the hearing officer was wrong.

As pointed out by the Defendants' in their motion for summary judgment at p. 12-13 for the exhaustion of misconduct reports as stated in (MDOC Policy Directive 03.03.105 (Their Exhibit 3) of Defendants' exhibits which are adopted here by reference. Policy Directive 03.03.105 at www, "A response shall be provided in writing to an appeal filed pursuant to paragraph uuu or vvv within 30 calendar days after receipt of the appeal." Due to the fact that Plaintiff has not as of 2/17/2017 received a response, it is clear that the waiver as discussed within Defendants' motion on page 10, is in effect. See United States v. Olano, 507 U.S. 725, 733 (1993).

The evidence of the fact that Plaintiff appealed is stated on the hearing form, **"Hold for Appeal."** Plaintiff was relieved of the exhaustion requirement by the failure to respond.

"While the Prison Litigation Reform Act requires exhaustion of available administrative remedies, a prison's failure to follow it's own procedure by delaying or withholding a grievance response relieves the inmate of the

5

exhaustion requirement. "[T]he exhaustion requirement is satisfied where prison officials fail to timely respond to an inmates' written grievance. "Boyd v. Corrections Corp. of America, 380 F.3d 989, 996 (6th Cir. 2004)(citing Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002)). "To hold otherwise would permit officials to exploit the exhaustion requirement through indefinate delay in responding to grievances. Davis v. Caruso, 2009 U.S. Dist. LEXIS 27633, 2009 WL 878193, *10 (E.D. Mich. 2009)(quoting Boyd, 380 F.3d at 996)."

In asking this Court to dismiss the May 27, 2016 retaliatory claim the Defendants' have stated that Plaintiff is collateral estopped precluded from bring the claim before this Court due to the minor misconduct ticket. Although Plaintiff has explained that Assist. Deputy Warden, Floyd failed to adjudicate the appeal, even if that had not been the case, a misconduct ticket have not prevented litigations in every case. See Campbell v. Gause, 2011 U.S. Dist. LEXIS 21871, the court citing Thomas v. Eby, 481 F.3d 434, 441 (6th Cir. 2007)(issuing a misconduct ticket in retaliation for protected activity is an "adverse action"). In the Jackson case, Jackson was found guilty of the minor misconduct, and the assist. Deputy Warden failed to adjudicate the ticket on appeal, the court found that the ticket had been written in retaliation. In this case Defendant Lamb came to Plaintiff's room and told Plaintiff that he had told him to stop writing complaints, and if he thought that writing one against him would change things he was wrong. Defendant Lamb wrote the misconduct ticket after he had tore up the Plaintiff's room, and this action was taken after Defendant Lamb had asked Robinson if he was the Robinson that had witnessed against him in a grievance for Scott, and torn his room apart. Defendant Lamb's intent to retaliate is clear, and he is not allowed to write a ticket in retaliation. Thomas, 481 F.3d 434, 441 (6th Cir. 2007). The Thomas court, also provided a clear understanding that two situations can be "entirely different."

A WAY WITH WORDS

UNIT 

**Author's Style and Voice** 817

TEXT ANALYSIS WORKSHOP: Elements of Style, Voice

WRITING WORKSHOP: Informative Text: Analysis of an Author's Style

PUTTING IT IN CONTEXT

UNIT 9

**History, Culture, and the Author** 915

TEXT ANALYSIS WORKSHOP: Understanding Historical and Cultural Context, Writer's Background

WRITING WORKSHOP: Informative Text: Online Feature Article

---

**THE CLASSIC TRADITION**

SHAKESPEAREAN DRAMA

UNIT 10

**The Tragedy of Romeo and Juliet** 1019

TEXT ANALYSIS WORKSHOP: Shakespearean Tragedy, Shakespeare's Language, Reading Shakespeare

WRITING WORKSHOP: Argument: Critical Review

EPIC POETRY

UNIT 11

**The Odyssey** 1185

TEXT ANALYSIS WORKSHOP: Characteristics of the Epic, The Language of Homer, Reading the Epic

WRITING WORKSHOP: Narrative: Video Script

INVESTIGATION AND DISCOVERY

UNIT 12

**The Power of Research** 1289

*Online at*



**THiNK** central

*Log in to learn more at thinkcentral.com, where you can access most program resources in one convenient location.*

**LITERATURE AND READING CENTER**
- Author Biographies
- *PowerNotes* Presentations with Video Trailers
- Professional Audio Recordings of Selections
- Graphic Organizers
- Analysis Frames
- NovelWise

**WRITING AND GRAMMAR CENTER**
- Interactive Student Models*
- Interactive Graphic Organizers*
- Interactive Revision Lessons*
- *GrammarNotes* Presentations and Practice
*also available on WriteSmart CD-ROM

**VOCABULARY CENTER**
- *WordSharp* Interactive Vocabulary Tutor
- Vocabulary Practice Copy Masters

**MEDIA AND TECHNOLOGY CENTER**
- MediaScope: Media Literacy Instruction
- Digital Storytelling
- Speaking and Listening Support

**RESEARCH CENTER**
- Writing and Research in a Digital Age
- Citation Guide

**Assessment Center**
- Program Assessments
- Level Up Online Tutorials
- Online Essay Scoring


MORE TECHNOLOGY

**Student One Stop**
Access an electronic version of your textbook, complete with selection audio and worksheets.

**Media Smart** DVD-ROM
Sharpen your critical viewing and analysis skills with these in-depth interactive media studies.

As in Plaintiff's case, the filing of lawsuits and grievances which was the cause for the retaliation in tearing up Plaintiff's legal papers, and basis for Defendant Lamb writing a minor misconduct for and alleged padlock with scratches and cardboard material were entirely different and cannot preclude the May 27, 2016 retaliatory acts of Defendant Lamb since the documents he tore up had nothing to do with the ticket.

This Court should find that Plaintiff has properly exhausted his administrative remedies and deny Defendants' motion for summary judgment.

II.      PLAINTIFF HAS STATED A CLAIM AGAINST DEFENDANT LAMB FOR DENYING PLAINTIFF HIS RIGHT TO ACCESS THE COURT WHEN HE DESTROYED AND SEIZED THE LEGAL MATERIALS THAT WOULD HAVE BEEN USED TO BRING A LAWSUIT ALLEGING A DENIAL OF MEDICAL TREATMENT

Plaintiff had the right to file regardless of the Defendants' filing, as neither a motion to dismiss nor a motion for summary judgment extinguishes a plaintiff's right to amend a complaint. Yuhasz v. Brush Wellman, Inc., 341 F.3d 559, 569 (6th Cir. 2003). See slao Zaidi v. Ehrlich, 732 F.2d 1218, 1220. The Defendants' on the other hand, have violated the rules without giving a reason for why. See Exhibit 2.

The Sixth Circuit held in Pilgrim v. Littlefield, 92 F.3d 413, 416 (6th Cir. 1996), For a prisoner to prevail on an access to the courts claim the prisoner "must plead and prove prejudice stemming from the asserted violation....Plaintiff [must] allege [a] litigation-related determent."

The destruction and seizure of legal documents by Defendant Lamb prejudice Plaintiff's litigation against Dr. Craig Hutchison, MD. Defendant Lamb destroyed documents that had been given to Plaintiff by inmate George H. Billops, 139701. Inmate Billops is now deceased. Billops had given Plaintiff his medical documents that revealed how his hepatitis C, had progressed and how his hepatitis C, was the same as Plaintiff before it became liver cancer. He also

7

gave Plaintiff an affidavit to this effect. See Exhibit 3.

These documents cannot be replicated because the Michigan Department of Corrections will not allow Plaintiff to receive Billops medical files. The files showed that Plaintiff and Billops medical condition of hepatitis C, was identical. The nature and duration of Billops illness before his death would be the same for Plaintiff without treatment. The obviousness stadard for determining a serious medical need is distinct from a separate branch of Eighth Amendment decisions where the seriousness of a prisoner's medical needs "may also be decided by the effect of delay in treatment." Hill v. Dekalb Reg'l Youth Det. Center, 40 F.3d 1176, 1188 (11th Cir. 1994)(quoted in Balckmore v. Kalamazoo County, 390 F.3d 890, 897 (2004). Although Dr. Hutchinson has allowed prisoners at stage 3+ of 4 in the development of liver cirrhosis, and prisoners suffer from irreversible cirrhosis of the liver as a result, Dr. Hutchinson has avoided liability by claiming to have no "actual subjective awareness." See Owens v. Hutchnison, 79 F. App'x 159, 161 (6th Cir. 2003),, and Allen v. Dr. Shawney et al., 2013 U.S. Dist. LEXIS 80822.

The Sixth Circuit instructs: "For a right to be clearly established, the contours of the right must be sufficiently clear that a resonable official would understand that what he is doing violates that right." Feathers v. Aev, 319 F.3d 843, 848 (6th Cir. 2003)(brackets and quotation marks omitted)(quoting Russo v. City of Cincinnati, 953 F.2d 1036, 1042 (6th Cir. 1992)). In the particular context of prison medical care, the Sixth Circuit further instructs: A government doctor merits qualified immunity if he has merely made a reasonable mistake in his medical judgment, but he is not entitled to such immunity if he correctly perceived all the relevant facts, understood the consequences of such facts, and disregarded those consequences in his treatment of a patient." Titlow, 507 Fed. Appx. 579, 2012 U.S. App. LEXIS 25406, 2012 WL 6097338, at *7

(quotation marks omitted)(quoting LeMarbe v. Wisneski, 266 F.3d 429, 440 (6th Cir. 2001))."

Had Defendant Lamb not destroyed and taken the documents, Plaintiff would have sent a copy of them, along with a copy of his medical records (See Exhibit 4) to Dr. Hutchnison and if he would have failed to treat Plaintiff, he would have "correctly perceived all the relevant facts, understood the consequences of such facts, and disregarded those consequences."

Defendant Lamb has prejudiced Plaintiff ability to bring the cases he would have litigated had Defendant Lamb not destroyed and taken the documents.

In Wright v. Newsome, 795 F.2d 964, 968 (11th Cir. 1986) "The allegations that prison officials seized Wright's pleading's and law book and destroyed other legal papers clearly states a claim of denial of access to the courts. Prison officials may not deny or obstruct an inmate's access to the courts. Johnson v. Avery, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969).

"Wright also sufficiently alleged facts bringing actions that might not otherwise be offensive to the constitution, such as the search itself or the confiscation and destruction of nonlegal materials (if not in violation of the due process clause) within the scope of the constitution by alleging that the action were taken in retaliation for filing lawsuits and administrative grievances. This type of retaliation violates both the inmate's right of access to the courts, Hooks v. Kelley, 463 F.2d 1210 (5th Cir. 1972), and the inmates First Amendment right. See Bridges v. Russell, 757 F.2d 1155 (11th Cir. 1985).

The Defendants' alleged that if Plaintiff needed the information he could request the court for a production of documents, court order or subpoena. Such an effort to obtain documents is not without failure. More often than not, a prison plaintiff is required to wait until they have over come summary judgment before receiving a discovery order.

9

Finally, the Defendants' argument that Plaintiff should now be precluded from adding his post misconduct hearing claims to the grievance and this action, are misplaced. The grievance for the May 27, 2016 were wrote on May 30, 2016 and the misconduct hearing was held on June 3, 2016; therefore, the Defendants' argument that "what was before admittedly contraband, became the loss or destruction of legal materials to justify an access to the courts claim. Which he would have raised in the misconduct hearing if true " is without merit and completely false. Plaintiff have never admitted to having contraband, and in fact, stated at the hearing that the padlock did not have any damage on it while in his possession. Therefore, the scratches on the lock had to be done by Defendant Lamb, and he as well presented a hobby craft card to show that the cardboard was hobbycraft material. Plaintiff did present the retaliation claim at the hearing. See Exhibit 1. Defendant Lamb had simple used the rules to attempt to cover up his retaliatory acts. "Prison officials are clearly free to punish inmate conduct that threatens the orderly administration of the prison. But ... prison rules are not [to be] used as a backdoor means of punishing inmates for exercising their right[s]." Brown v. Crowley, 312 F.3d 782, 791 (6th Cir. 2002), cert. denied, 540 U.S. 823, 124 S.Ct. 154, 157 L.Ed.2d 44 (20030 (internal quotation marks omited).

The evidence show that Defendant Lamb took such actions that would deter the ordinary person from continuing to engage in the right at stake when he used the rules to punish Plaintiff for exercising his rights.

III.     THE DEFENDANTS' ARE NOT ENTITLED TO QUALIFIED IMMUNITY

The doctrine of qualified immunity referring both to the objective and subjective elements, we have held that qualified immunity would be defeated if an official "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of

the [plaintiff], or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury..." See, Harlow v. Fitzgerald, 102 S.Ct. 2727 (1982).

"For a right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right". Leonard v. Robinson, 477 F.3d 3477-355 (6th Cir. 2007)(citation and internal quotation marks omitted). "A right is clearly established if there is binding precedent from the Supreme Court, the Sixth Circuit, the district court itself, or other circuits that is directly on point." Risbridger v. Connelly, 275 F.3d 565, 569 (6th Cir. 2002)(citation omitted). However, "[t]his is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of pre-existing law the unlawfulness must be apparent." Wilson v. Layne, 562 U.S. 603, 615, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999).

Causation in the constitutional sense is no different from causation in the common law sense. Indeed, "[s]ection [1983] should be read against the background of tort liability that makes a man responsible for the natural consequences of his action." Monroe v. Pape, 365 U.S. 167, 187,81 S.Ct. 473, 5 L.Ed.2d 492 (1961).

State employees of the Michigan Department of Corrections sued in their individual capacities "are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

The Defendants' did not put forth a responsive pleading in which to properly give a denial to allegations against them; however, they did put forth

affidavits and asserted at page 18 of their motion for summary judgment that they "acted reasonably and within the scope of their duties as employees with the MDOC." "the record does not support a finding that either Defendant knew or should have known or that his actions were objectively unreasonable."

The affidavits as put forth by the Defendants are challenged by the Plaintiff and witnesses that personally observed the violation and heard Defendant Lamb speaking to the Plaintiff. See Exhibits 5, 6, 7, & 8.

FRCP R. 8., "Averments in a pleading to which a responsive pleading is required, other than those as to the amount of damages, are admitted when not denied in the responsive pleading." Defendant Lamb made no mention of the January 25, 2016 incident within his affidavit. He did not deny that he asked Plaintiff about Cherryl Groves lawsuit, nor that he followed Plaintiff from the control center to his unit, and he did not state that he was assigned to the unit, nor did he deny that he committed the shake down of Plaintiff's room immediately upon entering the unit. Those facts were admitted to within the investigation information report of grievance JCF 2016 01 0221 19C. See Exhibit 9. These facts could be considered by the jury as an intent to commit the First Amendment violation against Plaintiff. Defendant Lamb's actions in following Plaintiff from the control center to Plaintiff's unit which was in a part of the facility in which Defendant Lamb were not assigned to and went to Plaintiff's unit for the sole purpose of violating Plaintiff's First Amendment right. See Verified Complaint at ¶ 11., was actions taken that a reasonable official would have known was a violation of the rights and were clearly established at the time of the violation. See Taylor v. Lantagne, 2012 U.S. Dist. LEXIS 10037, quoting the the Sixth Circuit Court's opinion in the case at p.4.

The credibility of Defendant Lamb's affidavit must be considered in bad faith. When Plaintiff attempted to resolve the January 25, 2016 incident with

Defendant Lamb, inmate Reyes stated within his affidavit at Exhibit 8, that he heard defendant Lamb make the statement to Plaintiff he should find something else to do other than filing lawsuits against MDOC's officials; a statement which Defendant Lamb has denied in his affidavit at ¶ 8. The cardboard house which Defendant Lamb have denied tearing up within his affidavit at ¶ 7., is stated within the hearing report at Exhibit 1.

Defendant Lamb would have this Court to believe that his actions with regards to the January 25, 2016 claim, was in accord with MDOC Policy Directive, Search and arrest in Correctional Facilities, 04.04.110, Exhibit 7, of Defendants motion for summary judgment which is adopted here by reference, is the reason why he followed Plaintiff from the control center to his unit, after telling him that he should find something else to do other than write complaints against MDOC officials. Again, Defendant Lamb is only using the rules to attempt to cover up his retaliatory acts. "Prison officials are clearly free to punish inmate conduct that threatens the orderly administration of the prison. But ... prison rules are not [to be] used as a backdoor means of punishing inmates for exercising their right[s]." Brown v. Crowley, 312 F.3d 782, 791 (6th Cir. 2002), cert. denied, 540 U.S. 823, 124 S.Ct. 154, 157 L.Ed.2d 44 (20030 (internal quotation marks omited). This law was clearly established at the time of the violation and Defendant Lamb knew or should have known that the right he was violating was so clearly established that any official in defendants' position would have clearly understood that he was under an affirmative duty to refrain from such conduct. Noble v. Schmitt, 87 F.3d 157, 160 (6th Cir. 1996).

A retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements

13

one and two-that is, the adverse action was motivated at leaset in part by the plaintiffs protected conduct. Thaddeus-X v. Blatter, 175 F.3d 378, 394 (6th Cir. 1999).

The first step in Plaintiffs' retaliation claim is to determine whether he were engaged in protected conduct.

As stated from the factual allegations in the verified complaint at ¶ 7. Plaintiff was called to the control center to pick up some legal mail, and notice that Defendant Lamb was looking at the legal mail which was a lawsuit against Cheryl Groves, that when Plaintiff and Defendant was outside of the control center, Defendant Lamb told Plaintiff that he need to find something else to do other than filing lawsuits against MDOC's officials. Plaintiff asked Defendant Lamb to be more direct and clarify what he was saying. Defendant Lamb asked Plaintiff if his lawsuit was still in court against Cheryl Groves and the others, Plaintiff answered yes, Defendant Lamb told Plaintiff that he should find something else to do other than filing lawsuits. See Ex. 8. It is therefore, clearly stated that Defendant Lamb was taking action against Plaintiff for the lawsuit he had in court against MDOC's officials. The Plaintiff has satisfied the first requirement of Thaddeus-X because the filing of a prison grievance is constitutionally protected conduct for which a prisoner cannot be subject to retaliation. Thaddeus-X, 175 F.3d at 394; see also Smith v. Campbell, 250 F.3d 1032, 1037 (6th Cir. 2001).

The second step in Plaintiff's retaliation claim is a showing of adverse action. Action that would "deter a person of ordinary firmness" from the exercise of the right at stake.

It is stated within the verified complaint at ¶ 8. Defendant Lamb followed Plaintiff to his unit, went into Plaintiff's room and began ransacking it and destroying Plaintiff's legal and personal property. Defendant Lamb tore up a

14

Second Edition 1910 Black Law Dictionary which costs $200.00 and is nolonger in print; he tore up 14 legal books that were of a paralegal course that Plaintiff paid a $1000.00 to Blackstone Career Institute to take; he tore up 12 court motions (Scott v. Groves 5:14-cv-12123 that Plaintiff had filed; he tore up grievances and documents which Plaintiff was to use to litigate a medical claim in, of which he can not file a meaningful claim without the documents; he tore up 1, publish your own magazine guide, 1 developing your web site strategy book and some religious documents which cannot be replaced; and he tore up a typewriter ribbon. See Exhibit 11. This action would deter a person of ordinary firmness from the exercise of the right at stake. The Plaintiff have satisfied the second requirement of Thaddeus-X, and the law was clearly established. In Wright v. Newsome, 795 F.2d 964, 968 it was held "The allegations that prison officials seized Wright's pleadings and law book and destroyed other legal papers clearly states a claim of denial of access to the courts. Prison officials my not deny or obstruct an inmate's access to the courts. In Bell v. Johnson, 308 F.3d 394, 604 (6th Cir. 2002) the Court stated "In addition, we have previously suggested in dicta that a retaliatory cell search and seizure of an inmate's legal documents satisfies the adverse action prong of the Thaddeus-X test." The Bell court further held that "[u]nder the applicable standard [announced in Thaddeus-X], then, [The plaintiff] had proven a First Amendment retaliation violation" based on the retaliatory shakedown and seizure of documents. Id. Bell, 308 F.3d 594, at 605. See also Green v. Johnson, 977 F.2d 1383, 1389-91 (10th Cir. 1992)(destruction of legal material sufficient to state "adverse action"); Nelson v. Gowdy, 2006 U.S. Dist. LEXIS 57236, 2006 WL 2604679, *17 (E.D. Mich., 2006)(Lawson, J.(citing Bell, at 603)("damaged personal items and grievance documents," combined with other forms of harassment, could be deemed adverse action) Quoted in Campbell v. Gause, 2011

15

U.S. Dist. LEXIS 21871, at 7.

The action taken by Defendant Lamb was witness by inmate Williams #948843 and inmate Robinson #778345. See Exhibit 6. & 7. A jury could find that Defendant Lamb committed these acts against the Plaintiff.

Plaintiff wrote grievance JCF-16-01-0221-19C against Defendant Lamb for his retaliatory actions taken against him. See Exhibit 9. As a result, Defendant Lamb committed the same treatment against inmate Robinson, and such actions were in violation as held in Thaddeus-X, 175 F.3d 378, 399. On 5/27/16 after Defendant Lamb completely tore up inmate Robinson's room for being a witness for Plaintiff, Defendant Lamb came to Plaintiff's room and told him that he had told him to stop writing complaints and that if he thought that writing one against him would change anything that Plaintiff was wrong, and told Plaintiff to step out of the room. Defendant Lamb then tore up Plaintiff's room again. He tore up a lot of legal motions, took some legal documents along with Plaintiff's hobbycraft items and did not report or return the documents or hobby craft items. Plaintiff wrote grievance JCF-16-06-1051-17g. See Exhibit 12. As in Bell v. Johnson, 308 F.3d 594, 605 (6th Cir. 2002) Bell's evidence shows that the defendants twice left the plaintiff's cell in disarray, confiscated his legal papers without returning them." The evidence in Plaintiff's case shows exactly that. The jury could find from this evidence that Defendant Lamb returned to Plaintiff's cell in retaliation for the grievance he wrote against him, and that he did violate Plaintiff's constitutional rights in doing so.

The Third element, a causal connection between the protected conduct and the adverse action. The analysis of motive in this retaliatory claim can begin with Defendant Lamb's own statement to Plaintiff, "he should find something else to do other than filing lawsuits." This statement was witness by inmate Reyes #266510 when Defendant Lamb told Plaintiff again "that he should find something

16

else to do other then filing lawsuits against MDOC's officials." See verified complaint at ¶ 10. See also Exhibit 8. Defendant Lamb was obviously motivated at least in part by Plaintiff's protected conduct when he followed Plaintiff to his unit after viewing and asking about the legal mail concerning Cheryl Groves. Although Defendant Lamb have denied telling Plaintiff to find something else to do other than filing complains against MDOC's officials, and have denied tearing up Plaintiff's legal documents, the record shows evidence which directly contradicted that testimony by neutral parties. A jury could find that Defendant Lamb was motivated by a desire to punish Plaintiff for his legal litigations against MDOC's officials.

Defendant Roark admitted at ¶ 6., of his affidavit that Plaintiff complained that Lamb was tearing up documents while he was tearing them up, not after he had completed the violation of tearing them up. A jury could find that Defendant Roard deliberately and knowingly joined Defendant Lamb in his actions against Plaintiff. That Defendant Roark had a duty to stop Defendant Lamb from violating the rule as stated within the work rule, and could have done so if he would have only went to observe Defendant Lamb's action, see Exhibit 10. Temporal proximity is sufficient to show that Defendant Roark knowingly joined Defendant Lamb's retaliatory motive. A reasonable officer would have known that what he was doing was wrong.

In considering the constitutional violation committed against Plaintiff by Defendant Roark, this Court is asked to consider the fact that "prison officials policy statements and other promugation's can create constitutionally protected interests in favor of the prisoners. See Kentucky Dep't of Corrections 490 U.S. at_____, 190 S.Ct. at 1908-09; Beard v. Livesay, 798 F.2d 874, 876 (6th Cir. 1986); Franklin v. Aycock, 795 F.2d 1253, 1260 (6th Cir. 1986); Bills v. Henderson, 631 F.2d 1287, 1291 (6th Cir. 1980)."

Defendant Roark was in violation of the work rule as listed within the Employee Handbook: Rule 13-14, "All employees shall be familiar with, enforce, and follow all Department rules, regulations, policies, and procedure. An employee shall not undermine or interfere with the Department's effort to enforce rules, regulation, policies, or procedures." and "Maintaining Order-All employees **shall** assist in maintaining order, action or inaction by an employee that may detract from maintaining order are prohibited. See Exhibit 10.

Defendant Roark admitted within his affidavit at ¶ 6, that Plaintiff complained to him that Defendant Lamb was tearing up documents and property in his cell, and wanted him to stop him. It was clear to Defendant Roark that Plaintiff was not complaining that Defendant Lamb had tore up documents, his complaint was that Defendant Lamb was tearing up documents, and Defendant Roark had a duty to stop Defendant Lamb from tearing up Plaintiff's legal property when Plaintiff reported it to him. Defendant Roark admit that if he had saw Defendant Lamb tearing up papers he would be obligated to report it and would do so. A jury could find that Defendant Roark refused to look and see if Defendant Lamb was tearing up the documents to avoid reporting it, and that he had a duty to maintain order by stopping Defendant Lamb from tearing up Plaintiff's legal documents and property and failed to do so. Defendant Roark had a duty to investigate the room after Plaintiff brought to the desk as much of the torn up property he could carry in his hands, after Plaintiff asked Defendant Roark to see the rest of the torn up property that was in the room. Defendant Roark was aware or should have known that his actions were wrong. The law was clearly established in Thaddeus-X, 175 F.3d 378, 393 that "if they knew or should have known that their actions were violating the plaintiffs' constitutional rights, then they will not be allowed to hide behind the cloak of institutional loyalty"), cert. denied, 453 U.S. 913, 101 S.Ct. 3147, 69 L.E.d.2d 997 (1981)."

("[D]eputy sheriffs who take part in an unlawful arrest ... are subject to liability together with those for whom they act, except where their good faith creates a privilege in them to act,)"(citation omitted)." Defendant Roark is not allowed to hide behind the cloak of institutional loyalty simply because he stood by and did nothing after being informed that Plaintiffs' constitutional rights were being violated. Defendant Roark is not entitled to qualified immunity.

Plaintiff's verified complaint and the additional affidavit with other record evidence, sufficiently created a genuine issue of material fact regarding the circumstances of the case. This is not a case in which the objective evidence in the record "blatantly contradicts" Plaintiff's version of the facts. See e.g., Scott v. Harris, 550 U.S. 372 (2007). The Defendants' affidavits' should not be considered as evidence that "blatantly contradicted" Plaintiff's verified complaint. The Sixth Circuit held in Corley v. Wal-Mart Stores East, LP. 2016 WL 53406 / No. 15-5202 / Jan. 4, 2016 "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). And the Court should not discredit Plaintiffs version of events. Coble v. City of White House, Tenn., F.3d 865, U.S. App. LEXIS 2632; 2011 FED App. 0047P *5 (6th Cir. 2011)("We allow cases to proceed to trial even though a party's evidence is inconsistent, because in reviewing a summary judgment motion, credibility judgments and weighing of the evidence are prohibited.' (citations omitted).

Plaintiff ask this Court for the indulgent treatment that "[c]ourts are

19

instructed to give ... to the inartfully pleaded allegations of pro se prison

litigants. Pasley v. Conerly, 345 Fed. Appx. 981, 986 (6th Cir. 2009)(quoting

Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)). For

the reasons as stated within this response in opposition to summary judgment,

Plaintiff ask this Court to deny the Defendants' motion for summary judgment.

February 17, 2017

James Scott 124522
G. Robert Cotton Corr. Facility
3500 N. Elm Road
Jackson, Michigan 49201-8877

## CERTIFICATE OF SERVICE

I, James Scott, certify that I have mailed to David Hoort (P28492), Attorney for MDOC Defendants, MI Dep't of Attorney General, Civil Litigation, Employment &, Election Division, P.O. Box 30736, Lansing, MI 48909 a copy of Plaintiff's motion and brief in support of Plaintiff's response in opposition to motion for summary judgment by giving it to a staff member at JCF Facility to be mailed by Expedited Legal Mail, on  February 17, 2017

James Scott 124522

James Scott #124522 v. Barry Lamb et al.
USDC-ED No: 16-13462
Honorable Bernard A. Friedman
Magistrate Judge Anthony Anthony P. Patti

### INDEX OF EXHIBITS

Exhibit 1 ...................................................Misconduct Hearing Report
Exhibit 2 ...................................................Legal Mail Form
Exhibit 3...................................................Billops' Affidavit
Exhibit 4...................................................Scott's Medical File
Exhibit 5 ...................................................Scott's Affidavit
Exhibit 6...................................................Williams' Affidavit
Exhibit 7...................................................Robinson's Affidavit
Exhibit 8   ...................................................Reves' Affidavit
Exhibit 9...................................................Grievance JCF-16-01-0221-19C
Exhibit 10...................................................MDOC's Work Rule
Exhibit 11 ...................................................Torn Up Legal Document and Books
Exhibit 12 ...................................................Grievance JCF-16-06-1051-17z

James Scott #124522 v. Berry Lamb et al.
USDC-ED No: 16-13462
Honorable Bernard A. Friedman
Magistrate Judge Anthony Anthony P. Patti


EXHIBITS 1

MICHIGAN DEPARTMENT OF CORRECTIONS
**CLASS II AND III MISCONDUCT HEARING REPORT**

CSJ-229
10/10

## GENERAL INFORMATION

| Prisoner Number | Prisoner Name | Facility Code | Violation Date |
|---|---|---|---|
| **124522** | **Scott** | **JCF** | **5/27/16** |

## MISCONDUCT VIOLATION

| Hearing | | Misconduct Charges |
|---|---|---|
| Class II | ☐ | **Contraband** |
| Class III | ☒ | |

| Misconduct Charge if Changed by Hearing Officer | Plea | |
|---|---|---|
| | ☐ Guilty | ☒ Not Guilty |

## WAIVER OF HEARING

| I understand I have a right to a hearing. I waive my right to a hearing and plead guilty to all charges. I also waive my right to appeal and accept the sanctions imposed. | Prisoner's Signature | Date |
|---|---|---|

## HEARING REPORT (Do Not Complete If Hearing Waived)

**Evidence and/or prisoner statement in addition to misconduct report:** Prisoner presented a hobbycraft card for the hearing.

I purchased that lock. I have five locks for my four footlockers and wall locker.

I have personal winter gloves. I can have state issue gloves.

**Reasons for findings:** Examination of the padlock reveals an area where it has been completely scratched off. Prisoner could not provide any disbursement for it.

The item that is being worked is made of cardboard material. The inside is made out of pop tart wrappers. It is not approved hobbycraft material.

It cannot be determined if inmate is in excess of state issued gloves. The report only indicates excess gloves. Prisoner is given the benefit of the doubt and gloves were returned at hearing.

Hold for appeal.

## FINDINGS

| | | | | |
|---|---|---|---|---|
| Charge 1 | ☒ Guilty | ☐ Not Guilty | CMIS Code | _____ |
| Charge 2 | ☐ Guilty | ☐ Not Guilty | CMIS Code | _____ |
| Charge 3 | ☐ Guilty | ☐ Not Guilty | CMIS Code | _____ |
| Charge 4 | ☐ Guilty | ☐ Not Guilty | CMIS Code | _____ |

## SANCTIONS (Hearing Investigator enters begin and end dates)

| | | | | |
|---|---|---|---|---|
| _____ | Days Toplock | Begins: _____ | Ends: _____ | |
| 1 | Days Loss of Privileges | Begins: 6/4/16 | Ends: 6/5/16 | ☐ Counseling/Reprimand (Class III only) |
| _____ | Hours Extra Duty | Begins: _____ | Ends: _____ | ☐ $ _____ Restitution (Class II only) |

Property Disposition if Applicable:

Misconduct Hearing Report given to Hearing Investigator for Delivery to Prisoner this date: _____

| Hearing Officer's Name (Print) | Hearing Officer's Signature | Hearing Date |
|---|---|---|
| J. Pazitka | | 6/3/16 |

| Hearing Investigator's Name (Print) | Hearing Investigator's Signature | Date |
|---|---|---|
| | | |

Distribution: Counselor File; Record Office File (Class II); Prisoner

MICHIGAN DEPARTMENT OF CORRECTIONS

**CLASS II AND CLASS III MISCONDUCT APPEAL**

CSJ-274
10/10
4835-3274

INSTRUCTIONS

1. This form is to be used SOLEY for appealing Class II and Class III hearing decisions. If a Class II or Class III decision was combined with a Class I hearing decision, a Request for Rehearing (CSJ-418) must be filed.
2. This form must be submitted within 15 calendar days after receipt of the hearing officer's written decision.
3. Class II hearing decisions are appealed to the Deputy Warden.
4. Class III hearing decisions are appealed to the Assistant Deputy Warden (ADW). (NOTE: Prisoners at Woodland Center Correctional Facility (WCC) and the Women's Huron Valley Correctional Facility (WHV) appeal to a Captain designated by the Warden.)
5. State your reason for appeal.
6. Attach a copy of misconduct and hearing report.

A rehearing shall be ordered if any of the following are found to have occurred:

a. The hearing was not conducted pursuant to Department policies and procedures and the departure from policy and procedure resulted in material prejudice to the prisoner.
b. The prisoner's due process rights were violated.
c. The decision of the hearing officer is not supported by the evidence on the record.

| Prisoner's Number | Name | Block/Unit Number | Cell/Room Number | Date of Incident |
|---|---|---|---|---|
| 124522 | J. Scott El | G*32 | 32 | 5/27/16 |

| Date of Hearing | Misconduct Class: ☐ II  ☑ III  Charge(s) | | Sentence |
|---|---|---|---|
| 6/3/16 | | Contraband | One day LOP |

BRIEFLY DESCRIBE THE BASIS OF YOUR APPEAL:

As stated within the hearing report, I presented my hobby craft card to show that what the ARUS is calling cardboard, is on the hobby craft card. The ARUS did not check with hobby craft to see if the material is allowed by the hobby craft Director; and, if the item was considered by the ARUS as an item not approved, I should be allowed to send it home since it is mine, and the material which it is made of belong to me.

I offered the property sheet for my lock, which I have had for more than 20 years; the only evidence the ARUS wanted was the disbursement. The padlock did not have any damage on it while in my possession. I had the unit officer to give testimony to the ARUS concerning the retaliatory actions officer B. Lamb had been taking against me, as it was officer B. Lamb that obviously did the damage to the lock, torn up the hobby craft item that I was working on, took some state gloves for no other reason than the fact that I had some of my own; and torn up my room for the second time, all in retaliation for filing complaints against MDOC's staff members, as stated by B. Lamb. Anyone can see that there were never a number under the scratches, and my number is on the lock; the lock should be returned to me.

**(do not write below this line)**

APPEAL RESPONSE:

☐ Disapproved  ☐ Approved  ☐ Returned without action – not filed within 15 days

| Signature of Warden; Deputy Warden (Class II); Signature of ADW/WCC/WHV Captain (Class III) | Date |
|---|---|
| | |

DISTRIBUTION: WHITE – Deputy Warden (Class II); ADW/WCC/WHV Captain (Class III);  CANARY – Retained by Prisoner

MICHIGAN DEPARTMENT OF CORRECTIONS

# HOBBYCRAFT CARD

CAJ-886
REV. 10/06
4835-0886

| Prisoner Number: 124522 | Prisoner Name: Scott, James | Security Level: ☐ I ☒ II ☐ III ☐ IV ☐ V | Lock: G-32 | Facility: JCF |
|---|---|---|---|---|

Supplies approved for use in this facility by the above prisoner for the following hobbycraft activities:

| | | |
|---|---|---|
| ☐ All levels | Drawing and painting | Only materials, supplies and projects authorized by security level at this facility are allowed. |
| ☐ Levels I, II, III & IV | Needlecraft | |
| ☐ Levels I, II & III | Beadcraft | Materials, supplies and projects are subject to property limits identified in PD 04.07.112. |
| ☐ Levels I, II & III | Leathercraft | |
| ☐ Levels I, II & III | Soft wood structuring | Completed projects must be removed from the facility. |
| ☐ KCF & MCF only | Ceramics | All materials, supplies and projects will be considered contraband if prisoner is terminated from the program. |

| | Date | Items approved for in-cell use | Items approved for supervised use only | Signature, Hobbycraft Supervisor |
|---|---|---|---|---|
| 1. | 12/13/12 | Glitter Gel | | *(signature)* |
| 2. | | Glitter Glue | | |
| 3. | | Colored Pencils | | |
| 4. | | Glitter | | |
| 5. | | Glue | | |
| 6. | | Glue Sticks | | |
| 7. | | Pastels | | |
| 8. | | Acrylic Paint | | |
| 9. | | Scissors | | |
| 10. | | Oil Pastels/Color Sticks | | |
| 11. | | Markers | | |
| 12. | | Safe-T Geometry Set | | |
| 13. | | Clear Barrel Pens | | |
| 14. | | Acrylic Panters Markers | | |
| 15. | | Card Stock | | |
| 16. | 3/19/13 | Blenders | | |
| 17. | | Tag Board | | |
| 18. | | Plastic Paint Palette | | |
| 19. | 4/19/13 | Art Bin | | |
| 20. | | 2 Plastic Rulers | | |
| 21. | | Construction paper | | |
| 22. | 6/19/13 | Clear Barell Pens | | |
| 23. | | *********************** | Sharpener turned in 10/21/14 | *(signature)* |
| 24. | | Erasers | | |
| 25. | | Acrylic Gliter Glaze | | *(signature)* |

Distribution: ☐ Hobbycraft Supervisor     ☐ Prisoner

James Scott #124522 v. Barry Lamb et al.
USDC-ED No: 16-13462
Honorable Bernard A. Friedman
Magistrate Judge Anthony Anthony P. Patti

**EXHIBITS 2**

MICHIGAN DEPARTMENT OF CORRECTIONS
**DISBURSEMENT AUTHORIZATION (EXPEDITED LEGAL MAIL - PRISONER)**

4835-3318
CSJ-318   05/02

**Please PRINT clearly illegible and/or incomplete forms will not be processed.**

G-95      Lock

JCF      Institution

| 124522 | J. Scott Fl |
|---|---|
| Prisoner Number | Prisoner Name (Print Clearly) |

☑ Legal Postage      ☐ Filling Fee $          ☐ Certified Mail (Must Be a Court Ordered Requirement)

☐ New Case      ☑ Case Number  16-13462

Pay To:  JCF Mail

Mailing Address:  United States District Court
For The Eastern District Of Michigan
~~Office Of The Clerk~~
Theodore Levin United States Courthouse
231 West LaFayette BLVD. - Room 564
~~Detroit, Michigan 48226~~

**The following section must be completed in Authorizing Staff Member's presence.**

Prisoner Signature                Date & Time Submitted: 9:30 a.m. 11/27/16

Received By
(Print Name & Title)                Staff Signature:

Date & Time Received by Authorizing Staff: 0930 AM 11/29/16

**Authorization Denied:**

☐ Does not meet definition of legal mail or court filing fee as identified in CFA OP 05.03.118.

☐ Not hand delivered to authorizing staff member.          ☐ New case or case number not on form.

☐ Does not include court order for handling as certified mail.          ☐ Other

☐ Prisoner refused to sign & date in staff member's presence.

**Section below to be completed by Mail Room Staff**

Placed in Mail by
(Print Name & Title):  Norder GOA          Signature:  Norder

Postage Amount: $ 1.57      Date & Time placed in outgoing Mail: 11/30/16  835

**Only Business Office Staff are to Write in the Section Below**

| Obligation Amount | Actual Expense |
|---|---|
|  |  |
|  |  |
|  |  |

☐ Court filing Fee Denied due to NSF.

Date Posted:
Date & Time Copy Sent to Prisoner:  DEC 01 2016

Processed By
(Print Name & Title):          Signature:  W. Osborn Accounting Tech

DISTRIBUTION:   White - Prisoner Accounting   Canary - Prisoner   Pink - Counselor's File   Goldenrod - Prisoner

James Scott #124522 v. Barry Lamb et al.
USDC-ED No: 16-13462
Honorable Bernard A. Friedman
Magistrate Judge Anthony Anthony P. Patti

## EXHIBITS 3

## AFFIDAVIT OF GEORGE H. BILLOPS #139701

I, George H. Billops, being duly sworn, depose and state the following:

1. If sworn as a witness, I can testify competently to the facts contained within this affidavit.

2. This affidavit is given to James C. Scott El, #124522, with hope that it shall help him prevent having to wait until he have liver cancer before he can receive treatment; there is medication available to non-prisoners to prevent the corrosion and liver cancer that is caused by Hepatitis C, from taken place.

3. I was informed in 1996 that I had hapatitis C.

4. In the year of 2010, I had an interview with Dr. Hutchinson, he informed me that my Hepatitis C, had reached the second level, of liver cancer.

5. Dr. Hutchinson informed me that they would now begin treatment for it. That they would provide a six week treatment plan for me.

6. I asked Dr. Hutchinson why had it taken so long to begain treatment, and if it could have been prevented from becoming liver cancer?

7. Dr. Hutchinson informed me that it would not be cost efficient to try an treat the liver before there were some corrosion of the liver. That they could not waste money attempting to prevent corrosion of the liver or prevent liver cancer, and fail, then having to spend money in hope to cure it.

8.   In 2014, I was treated for my Hepatitis C. The treatment failed, and they are going to try another treatment which just became avsilable, so I'm told.

9.   For my cancer, I was given a tase treatment on the right side of my liver, which has developed to the fourth stage of liver cancer with a tumor on the right and left side of my liver.

George H. Billops #139701
G. Robert Cotton Corr. Facility
3500 N. Elm Road
Jackson, MI 49201


Subscribed and sworn to before me, a Notary Public,

on the 6TH day of April, 2015

NOTARY PUBLIC

My commission expires: 9-27-21

James Scott #124522 v. Barry Lamb et al.
USDC-ED No: 16-13462
Honorable Bernard A. Friedman
Magistrate Judge Anthony Anthony P. Patti


EXHIBITS 4

# INFECTIOUS DISEASES CONSULTATION – page B (HCV)
### Craig Hutchinson, MD

*P2 of 2*

**Patient Name**  Scott, James C
**MDOC Number**  124 522
**Date**  12-15-11

**Assessment:**

Chronic hepatitis c infection gt. 1a  Bx 5-11-11 G 1 S0
He does not have extrahepatic dz 2° HCV
He does not meet MDOC 7-1-08 criteria for antivirals @ this time.

**Recommendations:**

Schedule the patient every six months for viral hepatitis or GI chronic care clinic with pre-visit CBC and comprehensive metabolic panel. [Refer for reconsideration of antivirals if evidence of rapid fibrosis (e.g., rising direct bilirubin or falling albumin or platelets) or evidence of significant extrahepatic disease (renal, skin or eye) emerges.

If still in MDOC, consider repeat liver biopsy (or validated noninvasive method of determining liver fibrosis) in 5 years.

Provide patient information sheets from MDOC HCV program statement.

ANA ; advise if ≥ 1:320
Flu as needed (as above)

**Patient Education and Discussion Today Included:**
I explained that liver biopsy results and the screening for HCV-related disease outside the liver do not presently qualify for antiviral treatment under the current MDOC HCV protocol. I advised abstinence from ethanol and frequent/high-dose acetaminophen. I explained transmission of HCV, HIV, HBV, and other blood-borne/STDs by unsafe sex and sharing of sharps and personal items. I reviewed my Assessment and Recommendations with the patient, and solicited and answered questions.

*C Hutch[signature]*

Craig Hutchinson, MD, FACP
Prison Health Services of Michigan
6452 Millenium Dr. Ste 100
Lansing, MI 48917-7881
Phone 517-449-5455
Fax 517-333-2071

# Step II Grievance Appeal Response

| Grievance Number: RRF 2011 12 0995 12D |
| --- |
| Prisoner Name: Scott |
| Prisoner Number: 124522 |

I have reviewed your Step I Grievance, the Step I Response, and your Step II Reason for Appeal.

| **SUMMARY OF STEP I COMPLAINT:** Inmate was seen by Dr. Hutchinson on 12/15/11 and was informed that MOC would not treat inmate's Hepatitis C virus re: cost. Dr. Hutchinson stated he would not order treatment unless liver was at level 2. Inmate is requesting to have treatment for Hepatitis C and $300.00 for Dr. Hutchinson failure to treat, stated he has been living under emotional distress with this illness since 2008. |
| --- |
| **SUMMARY OF STEP I RESPONSE:** Inmate was seen by Dr. Hutchinson on 12/15/11. Appropriate lab work was ordered by Dr. Hutchinson. Per Dr. Jayawardena, liver disease is treated at level 2. Inmate level biopsy result stage 1. Inmate is followed by the Viral Hepatitis Chronic Care Clinic and appropriate labs are ordered and monitored. His chronic care visits have been 1/4/12, 1/5/11 and 6/24/11. |
| **SUMMARY OF STEP II REASON FOR:** Grievant alleged the step one response indicated that policy 03.04.100 supported Dr. Hutchinson decision not to order treatment at this time because it is not cost efficient at this time. Grievant alleges he had been living under emotional distress since 2008. |
| **SUMMARY OF STEP II INVESTIGATION:** Grievant's electronic medical record was reviewed. Documentation on 12/15/11 by Dr. Hutchinson revealed appropriate lab work was ordered and grievant liver biopsy result is at stage 1. Per grievant medical provider, liver disease is treated at stage 2. Grievant condition is being monitored and appropriate lab work is being ordered by the Viral Hepatitis Chronic Care Clinic. Grievant is encouraged to access the health care request process to address any future health care concerns. |
| **CONCLUSION:** Evidence<br>• Policy 03.04.100 Health Care Services.<br>• Grievance: Denied. |

| **RESPONDENT NAME:** Alfred Jones | **TITLE:** Administrative Assistant Southern Region Health Care Services |
| --- | --- |
| **RESPONDENT SIGNATURE:** *Alfred Jones* | **DATE:** February 21, 2012 |



## INFECTIOUS DISEASES ADMINISTRATIVE NOTE

A primary care practitioners referral for evaluation of HCV infection prompted review of this patients medical record. The MDOC HCV treatment program currently prioritizes HCV direct-acting antivirals (DAAs) for patients with advanced liver fibrosis (stage 3 of 4 or stage 4 of 4).

### ASSESMENT:

Chronic HCV infection, genotype 1a. Liver fibrosis evaluation completed via biopsy 05-11-2011 showed stage 0 of 4. Noninvasive testing [APRI score 0.36, FibroSURE fibrosis score 0.14 (F0) and Fibrosis 4 score 2.14 on 02-02-2016] indicates the absence of advanced liver fibrosis. The patient is not considered high priority for DAA treatment at this time.

### RECOMMENDATIONS:

Educate the patient regarding protection of liver* and reduced risk of transmission of blood-borne/STDs**. Follow the patient with a Comprehensive Panel, CBC and chronic care clinic visit every 4-6 months to monitor for evidence of progressive liver fibrosis or the development of any substantial extrahepatic manifestations of HCV***. Refer to ID if suspected extrahepatic disease develops during follow-up. APRI and Fibrosis 4 scores will be routinely calculated on data from the most recent Comp panel and CBC.

If appropriate, immunize for HAV, HBV, TDaP, pneumococcus, and seasonal influenza.

Primary care practitioners will be advised if and when HCV treatment is accessible to patients without evidence of advanced liver fibrosis.

---
Brendan Sherry, MS, PA-C // Craig Hutchinson, MD, FACP


Points to make during chronic care visits:
Healthy adults have lots more liver than they need, and the liver can regenerate substantially. To avoid running low or running out, MI DOC will offer regular blood testing to evaluate the liver. If these tests indicate that advanced fibrosis (stage 3 or 4) is likely (which may or may not never happen), or substantial HCV-related disease outside the liver you will be considered for treatment. There are some things you can do to avoid making it worse and avoid giving HCV to others.

*Dont drink alcohol because it also kills liver cells. Dont take too much acetaminophen (Tylenol): 650 mg (two regular strength) three times daily is generally safe for daily use.

** Dont give HCV to others, and dont get HIV, hepatitis B, or other infections that are spread by sex and blood.
Unless planning pregnancy, men should use condoms for all sex with others.
Unless planning pregnancy, women should insist on condoms for all sex with men.
Dont share any sharp or personal items that might have blood in or on them. This especially includes items for injecting, tattooing or snorting, but also razors, nail clippers or toothbrushes.

***HCV rarely causes medical problems outside the liver, but the most serious of these may include:
kidney disease with rising creatinine, B-cell or hepatic lymphoma, vasculitis, neuropathy, eye disease (corneal ulcer, scleritits, uveitis), cryoglobulinemia with palpable purpura.

SCOTT, # 124522
DOB 10/05/1951

James Scott #124522 v. Barry Lamb et al.
USDC-ED No: 16-13462
Honorable Bernard A. Friedman
Magistrate Judge Anthony Anthony P. Patti

EXHIBITS 3

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHER DIVISION

JAMES SCOTT #124522
          Plaintiff,                        Case No: 16-13462

                                            Hon. Bernard A. Friedman

vs.                                         Magistrate Anthony P. Patti


BARRY LAMB, et al.,
          Defendants.

---

James Scott #124522                  David Hoort (P28492)
Plaintiff, Pro Se                    Attorney for MDOC Defendants
G. Robert Cotton Corr. Facility      MI Dep't of Attorney General
Jackson, Michigan 49201-8877         Civil Litigation, Employment &
(517) 780-5147 ext. 5196             Election Division
                                     P.O. Box 30736
                                     Lansing, MI 48909
                                     (517) 373-6434

---

## AFFIDAVIT OF JAMES SCOTT, 124522

I. James Scott, having been duly sworn, depose and says:

1.      If sworn as a witness, I can testify competently to the facts contained within this affidavit.

2.      I complained to Defendant Roark that Defendant Lamb was tearing up documents and property in my cell, and wanted him to stop him. Defendant Roark said that Defendant Lamb was just doing his job." When Defendant Roark told me that he was not going to stop Defendant Lamb, I informed Defendant Roark that if he was not going to stop him, I was going to write a grievance on him for failure to stop him from tearing up my property, and Defendant Roark said go a head.

3.      I attempted to resolve the grievance orally with Defendant Lamb as well, I asked him why did he tear up my    books and documents and Defendant Lamb told me again, that I should find something else to do other then filing lawsuits against MDOC's officials. I told Defendant Lamb that I would be writing a grievance on him for destroying my legal property.

4.      Among the documents which Defendant Lamb destroyed and seized were documents being used to litigate a case against a Doctor. The documents cannot be replicated because they were provided by inmate Billops, 139701; he is now deceased and the MDOC will not allow me to obtain Billops medical file.

Affiant says nothing further.

James Scott 124522
G. Robert Cotton Corr. Facility
3500 N. Elm Road
Jackson, Michigan 49201-8877


Subscribed and sworn to before me, a Notary Public, on the _____ day of December, 2016

_____

Notary Public, Jackson County, Michigan

My Commission Expires: _____

CHRIS YOUNG
NOTARY PUBLIC, STATE OF MI
COUNTY OF JACKSON
MY COMMISSION EXPIRES May 27, 2020
ACTING IN COUNTY OF _____

James Scott #124522 v. Barry Lamb et al.
USDC-ED No: 16-13462
Honorable Bernard A. Friedman
Magistrate Judge Anthony Anthony P. Patti


EXHIBITS 6

AFFIDAVIT
OF
KELVIN WILLIAM #948843

I, Kelvin William, being duly sworn, depose and says the following:

1.      If sworn as a witness, I can testify competently to the facts contained within this affidavit.

2.      That I am making this affidavit to tell the truth about what I saw Officer Lamb do to Scott El #124522 legal property on January 25, 2016.

3.      That on January 25, 2016, while I was in the day room, I saw Officer Lamb destroy Scott El's property.

4.      I saw Officer Lamb as he took book after book and tore the pages out of the books. He tore up a lot of papers; and he tore up a typewritter ribbon and just let the ribbon inside of the case, fall to the floor.

    AFFIANT SAYS NOTHING FURTHER.

                        _Kelvin Williams_

                        Kelvin William #948843
                        G. Robert Cotton Corr.
                        3500 N. Elm Road
                        Jackson, MI 49201


Subscribed and sworn to before me,
a Notary Public, on the 29 day of January, 2016

_James King_
    NOTARY PUBLIC

Jackson    County, Michigan

My Commission expires 12/31/19

                JAMES KING
        NOTARY PUBLIC, STATE OF MI
            COUNTY OF JACKSON
    MY COMMISSION EXPIRES Dec 31, 2019
    ACTING IN COUNTY OF Jackson

James Scott #124322 v. Barry Lamb et al.
USDC-ED No. 16-13462
Honorable Bernard A. Friedman
Magistrate Judge Anthony Anthony P. Patti

EXHIBITS 7

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHER DIVISION

JAMES SCOTT #124522
      Plaintiff,

Case No: 16-13462

Hon. Bernard A. Friedman

vs.

Magistrate Anthony P. Patti

BARRY LAMB, et al.,
      Defendants.

---

James Scott #124522
Plaintiff, Pro Se
G. Robert Cotton Corr. Facility
Jackson, Michigan 49201-8877
(517) 780-5147 ext. 5196

David Hoort (P28492)
Attorney for MDOC Defendants
MI Dep't of Attorney General
Civil Litigation, Employment &
Election Division
P.O. Box 30736
Lansing, MI 48909
(517) 373-6434

---

## AFFIDAVIT OF JOSHUA ROBINSON EL, 778345

I. Joshua Robinson El, having been duly sworn, depose and says:

    1.      If sworn as a witness, I can testify competently to the facts contained within this affidavit.

    2.    On May 27, 2016 Officer Barry Lamb came to my room and asked me if I was Robinson, and I said that I was Robinson El. He asked me if I was the same Robinson that witness against him in a grievance wrote by Scott, down the hall, and I said yes!

    3.    Officer Barry Lamb told me to step out of the room, and he begin shaking the room down.

4.   As Officer Barry Lamb was leaving the room, I looked in and saw how much of a mess he had made and asked him if he would put my property back the way it was. He told me to write a grievance.

5.   Officer Barry Lamb's actions were taking against me in retaliation for being a witness against him in Scott El's grievance JCF 16/01/0221/19C, where I witness that I was standing in the day room, which is directly in front of Scott El's room and observed Officer Barry Lamb tearing up Scott El's books and papers.

Affiant says nothing further.

Joshua Robinson El 778345
G. Robert Cotton Corr. Facility
3500 N. Elm Road
Jackson, Michigan 49201-8877


Subscribed and sworn to before me, a Notary Public,
on the __14__ day of December, 2016

James King

Notary Public, Jackson County, Michigan

My Commission Expires: __12/31/19__

JAMES KING
NOTARY PUBLIC, STATE OF MI
COUNTY OF JACKSON
MY COMMISSION EXPIRES Dec 31, 2019
ACTING IN COUNTY OF Jackson

James Scott #124522 v. Barry Lamb et al.
USDC-ED No: 16-13462
Honorable Bernard A. Friedman
Magistrate Judge Anthony Anthony P. Patti

**EXHIBITS 8**

AFFIDAVIT
OF
TERRANCE REYES #266510

I, Terrance Reyes, being duly sworn, depose and says the following:

1.      If sworn as a witness, I can testify competently to the facts contained within this affidavit.

2.      That I am making this affidavit to tell the truth about the reason Officer Lamb tore up Scott El #124522 legal property.

3.      That I was standing there when Scott El asked Officer Lamb why he had torn up his legal property, and I heard Officer Lamb tell Scott El that he should find something else to do other then filing lawsuits against MDOC's officials.

        AFFIANT SAYS NOTHING FURTHER.

Terrance Reyes #266510
G. Robert Cotton Corr.
3500 N. Elm Road
Jackson, MI 49201

Subscribed and sworn to before me,
a Notary Public, on the ___29___ day of January, 2016

James King
NOTARY PUBLIC

Jackson County, Michigan

My Commission expires  12 | 31 | 19

JAMES KING
NOTARY PUBLIC, STATE OF MI
COUNTY OF JACKSON
MY COMMISSION EXPIRES Dec 31, 2019
ACTING IN COUNTY OF Jackson

James Scott #124522 v. Barry Lamb et al.
USDC-ED No: 16-13462
Honorable Bernard A. Friedman
Magistrate Judge Anthony Anthony P. Patti

**EXHIBITS** 9

MICHIGAN DEPARTMENT OF CORRECTIONS
**PRISONER/PAROLEE GRIEVANCE FORM**

4835-4247 10/94
CSJ-247A

Date Received at Step I _____   Grievance Identifier: [ ] [ ] [ ] [ ] [ ] [ ] [ ] [ ] [ ] [ ] [ ] [ ]

> Be brief and concise in describing your grievance issue. If you have any questions concerning the grievance procedure, refer to PD 03.02.130 and OP 03.02.130 available in the prison Law Library.

| Name (print first, last) | Number | Institution | Lock Number | Date of Incident | Today's Date |
|---|---|---|---|---|---|
| James Scott El | 124522 | JCF | G-32 | 1/25/16 | 1/27/16 |

What attempt did you make to resolve this issue prior to writing this grievance? On what date? _1/25/16_
If none, explain why.

On 1/25/16 I informed Officer Lamb that I would be writing
a grievance on him for destroying my legal property

State problem clearly. Use separate grievance form for each issue. Additional pages, using plain paper, may be used.
Four copies of each page and supporting documents must be submitted with this form. The grievance must be submitted
to the Grievance Coordinator in accordance with the time limits of OP 03.02.130.

On January 25, 2016 I was called to the Control Center to
pick up some legal mail. As I was signing for the mail, Officer
Lamb walked through the gate and stopped in front of me and said
nice contraband, take it off. I asked him, "what are you
referring to as contraband." He said, "the hat." I asked him,
this state hat." He said, "take it off." I took off the hat,
continued to sign for the legal mail and proceeded to leave the
building. I noticed that officer Lamb was leaving with me; and
once we were outside, he said, "Scott, you need to find
something else to do other than filing lawsuits against MDOC's
officials." I asked him what was he talking about, and he said,
is your lawsuit still in court against Cheryl Groves and the
others? I said yes! and he said, "as I said, you should find
something else to do other than file lawsuits." I started
walking toward the unit that I lock in, and I notice that

Continue-1 of 2

_____
Grievant's Signature

RESPONSE (Grievant Interviewed?   ☒ Yes   ☐ No   If No, give explanation. If resolved, explain resolution.)

See attached statement

_____        2/23/16        _____        2/23/16
Respondent's Signature           Date            Reviewer's Signature           Date
SGT. Heintz                      CSS-1                                           CSS-3
_____                         _____
Respondent's Name (Print)   Working Title        Reviewer's Name (Print)   Working Title

| Date Returned to Grievant: 2/26/16 | If resolved at Step I, Grievant sign here. Resolution must be described above. | _____ Grievant's Signature | _____ Date |
|---|---|---|---|

DISTRIBUTION:   White, Green, Canary, Pink — Process to Step One; Goldenrod — Grievant

Officer Lamb seem be following me. I entered G-Unit and went to my room; before I could take off my coat and hat, I was called over the speaker to report to the desk with my contraband hat. When I arrived at the desk, Officer Lamb told me to go get the contraband hat. I told him that this is the hat he called contraband in the Control Center. He then when to my room and tore it up. He tore up a Second Edition Black Law Dictionary which costed $200.00, and is nolonger in print. He tore up at least 14 legal books that were of the paralegal course that I took which cost a $1000.00. He tore up many court motions that I had filed; he tore up some religious documents that cannot be replaced; he tore up a typewritter ribbon.

I was standing on base by the window, where you can see directly into the room. I observed Officer Lamb tearing up some documents and I went to the desk to inform the Unit Officer Rourke, that Officer Lamb was tearing up some documents in my room. He said, "the officer is just doing his job." I told him, "Officer Lamb is tearing up my property and you should stop him." He said, "I'm not getting in the way of an officer doing his job."

I returned to the window so that I could continue to see what was going on, and I saw Officer Lamb tearing up my dictionary and some paralegal books. When he left the room and came upon base, I asked him why had he "tore up my books and documents." He said, "You should find something else to do other then filing lawsuits against MDOC's officials."

When Officer Rourke returned to the desk, I brought some of the torn up property to the desk to show him. He said that he didn't believe that Officer Lamb would do that, and asked me, "what would he gain from it?" I asked him, "did not officer Lamb say that it was because of the lawsuits that I filed and he wanted me to stop?" He said, "I wasn't in the unit when you had that conversation."

Inmate Reyes #266510, was standing there when I asked Officer Lamb why had he torn up my property, and heard him tell me that I should find something else to do other then filing lawsuits against MDOC's officials; and he will make a statement to that effect.

Inmate Williams #948843, and inmate Robinson El #778345, will make statements that they were in the day room, which is directly in front of my room, and that they observed Officer Lamb tearing up my books and papers.

Officer Lamb was working on the level 1 side of the prison and had no authority to enter level II - G-Unit without signing the log book in G-Unit when he entered and when he left. If he believed that I had a contraband hat on, he could have taken it at Control Center; if he wanted to take it from the unit, he could have called the unit and had them to obtain it.

The actions taken by Officer Lamb was unconstitutional. I want him to pay for the property which he destroyed; and time off for violating the Officers Conduct by entering G-Unit without signing the log book.

## Step I Grievance Response

| Grievance Number: | J | C | F | 2 | 0 | 1 | 6 | 0 | 1 | 0 | 2 | 2 | 1 | 1 | 9 | C |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Prisoner Name: | James Scott | | | | | | | | | | | | | | | |
| Prisoner Number: | 124522 | | | | | | | | | | | | | | | |

| Prisoner | ☒ | was | | was NOT interviewed.  GIVE REASON: | |
|---|---|---|---|---|---|

### SUMMARY OF COMPLAINT:

Inmate Scott states that C/O Lamb B had shookdown his cell G-32 on 1/25/16 looking for a contraband brown stocking hat. Inmate Scott states that C/O Lamb did not find a contraband hat. Inmate Scott states that C/O Lamb had torn up law books and a plastic bag of legal work.

### INVESTIGATION INFORMATION:

C/O Lamb B did enter G-unit and conduct a shakedown of cell G-32 looking for a contraband brown stocking hat that inmate Scott had been wearing when he was in the 100 building signing for his legal mail. C/O Lamb stated that he did not tear up any legal work belonging to inmate Scott. Inmate Scott approached the officers desk with a small pack of paper 1 inch thick that had been torn after C/O lamb left the unit. Inmate Scott did not display any other torn items to the officers working in G-unit on 1/25/16.

### APPLICABLE POLICY, PROCEDURE, ETC.:

N/A

### SUMMARY:

C/O Lamb did enter G-unit and shakedown cell 32 belonging to inmate Scott looking for a contraband brown stocking hat. Inmate Scott did go to the officers desk with a small pack of papers 1 inch thick that had been torn. Inmate Scott did not have any other papers or books with him. Inmate Scott never asked to speak with a supervisor regarding the shakedown of cell G-32 that was conducted by C/O Lamb.

There is not sufficate evidence to support the claim made by inmate Scott.

| RESPONDENT NAME: | R. Houtz | TITLE: | CSS-I |
|---|---|---|---|
| RESPONDENT SIGNATURE: | *signature* | DATE: | 2/23/16 |
| REVIEWER NAME: | B. Johnsen | TITLE: | CSS-III |
| REVIEWER SIGNATURE: | *signature* | DATE: | 2/23/16 |

G32



STATE OF MICHIGAN
**DEPARTMENT OF CORRECTIONS**
LANSING

RICK SNYDER
GOVERNOR

HEIDI E. WASHINGTON
DIRECTOR

## STEP III GRIEVANCE DECISION

77766

**To Prisoner:** Scott          **#:** 124522

**Current Facility: JCF**

**Grievance ID #:** JCF-16-01-0221-19c

**Step III Received:** 3/14/2016

Your Step III appeal has been reviewed and considered by the Grievance Section of the Office of Legal Affairs in accordance with PD 03.02.130, "Prisoner/Parolee Grievances". Upon examination it has been determined that your issue was in fact considered, investigated, and a proper decision was rendered.

**THE STEP III APPEAL IS DENIED.**

THIS DECISION CANNOT BE APPEALED WITHIN THE DEPARTMENT.

**Date Mailed:**   JUN 0 7 2016

---
**Richard D. Russell, Manager Grievance Section, Office of Legal Affairs**

cc: **Warden, Filing Facility:** JCF

MICHIGAN DEPARTMENT OF CORRECTIONS

4835-4248 5/09
CSJ-247B

**PRISONER/PAROLEE GRIEVANCE APPEAL FORM**

Date Received by Grievance Coordinator
at Step II: 3/2/16

Grievance Identifier: | J | C | F | 1 | 6 | 0 | 1 | | 0 | 2 | 2 | 1 | 9 | c |

RECEIVED - MDOC

MAR 14 2015

Office of Legal Affairs

**INSTRUCTIONS:** THIS FORM IS ONLY TO BE USED TO APPEAL A STEP I GRIEVANCE. The white copy of the Prisoner/Parolee Grievance Form CSJ-247A (or the goldenrod copy if you have not been provided with a Step I response in a timely manner) **MUST** be attached to the white copy of this form if you appeal it at both Step II and Step III.

If you should decide to appeal the Step I grievance response to Step II, your appeal should be directed to: ~~Legal Affairs~~ Hemry by 3/8/16 . If it is not submitted by this date, it will be considered terminated.

If you should decide to appeal the response you receive at Step II, you should send your Step III Appeal to the Director's Office, P.O. Box 30003, Lansing, Michigan, 48909.

| Name (Print first, last) | Number | Institution | Lock Number | Date of Incident | Today's Date |
|---|---|---|---|---|---|
| James Scott El | 124522 | JCF | G-32 | 1/25/16 | 3/1/16 |

**STEP II — Reason for Appeal**    I was denied a fair an impartial investigation and report. Sgt. Houzt found that "C/O Lamb did enter G-Unit and shakedown cell 32 belonging to inmate Scott looking for a contraband brown hat. Inmate Scott did go to the desk with a small pack of papers 1 inch thick that had been torn. Inmate Scott did not have any other papers or books with him. Inmate Scott never asked to speak with a supervisor regarding the shakedown of cell G-32 that was conducted by C/O Lamb. There is not sufficate evidence to support the claim made by inmate Scott."        (Continue, 1 of 3)

**STEP II — Response**

Date Received by
Step II Respondent:
3/2/16

Date Returned to
Grievant:
3/7/16

Respondent's Name (Print)        Respondent's Signature        Date 3/4/16

**STEP III — Reason for Appeal**    This grievance is mailed on 3/11/2016
    Step Two completely disregarded my reason for the appeal, which was that I was denied a fair an impartial investigation and report. Sgt. Houtz acknowlegde that C/O Lamb left his post in level one, and entered level two G-Unit without signing the log book, and that he commit a shakedown of cell 32 looking for a brown hat. Sgt. Houtz acknowlegde that I had went to the desk with some papers
                    Continue, 1 of 2

**NOTE: Only a copy of this appeal and the response will be returned to you.**

**STEP III — Director's Response is attached as a separate sheet.**

DISTRIBUTION: White – Process to Step III; Green, Canary, Pink – Process to Step II; Goldenrod – Grievant

The evidence found by Sgt. Houtz clearly reveals that C/O Lamb retaliated against me by tearing up my property for filing complaints against MDOC Officials. The evidence reveals that C/O Lamb approached me in the control center and told me to take my hat off. If the hat had been contraband and C/O Lamb wanted the hat, he could have and should have taken the hat at control center, which he did not. The evidence reveals that he walked me outside, told me that I should find something else to do other than file lawsuits against MDOC's Officials, then he followed me to G-Unit, waited until I entered the room, then called me on the speaker telling me to report to the desk with my contraband hat. When I reported to the desk, he acted like the hat that I had was not the same hat so that he could shakedown the room. He then went to my room and tore up my legal papers and books. Sgt. Houtz is mistaken when he stated that I did not report the shakedown, I clearly stated within the grievance that I went to the desk after seeing C/O Lamb tearing up documents and reported to the Unit Officer Rourke. Officer Rourke stated that he was not getting in the way of an Officer doing his job.

Sgt. Houtz did not investigate the witnesses that heard C/O Lamb tell me that he torn up my property because I should find something else to do other then filing lawsuits against MDOC's Officials, and that witness C/O Lamb tearing up my property.

Sgt. Houtz was wrong in stating that there is no applicable policy, procedure, etc., available. When Sgt. Houtz interviewed me, we discussed the applicable policy, procedure, etc. The Employee Handbook at page 13, rule 5, Conduct Unbecoming A Department Employee: An Employee shall not behave in an imappropriate manner or a manner which may harm or adversally affect the reputation of the Department. Which is a class II insubordination. Page 11, rule 1: Inhumane Treatment Of Employee, Offenders And The Public - Employees are prohibited from treating (others) offenders in an inhumane manner. Due Process must be observed when setting penalties so that people are protected from abuse of power. An employee shall not act in a discriminatory or arbitrary manner or fail to observe required due process procedures, e.g.,

•Using speach, action, gesture or movement that cause physical or mental intimidation or humiliation.

Page 12, rule 3: Discrimination/Harassment - Employees are prohibited from retaliating against any one who raises or files a complaint on or reports harassment. An employee shall not engage in action that could constitute the use of his/her position for personal gain. Code of Ethics and Conduct -Employees. refer to PD 02 03 107

C/O Lamb was in violation of all the above applicable

2

policy, procedure, etc., when he told me that I need to find something else to do other than filing lawsuits against MDOC's Officials; and when he followed me to my room to tear up my legal property.

Officer Rourke was in violation of the Employee Handbook rule 13, at page 17: Failure To Enforce Or Follow Rules, Regulation, Policies or Procedures - All employees shall be familiar with, enforce and follow all Department Rules, Regulations, Policies and Procedure ... Rule 14, Failure To Assist In Maintaining Order - All employees shall assist in maintaining order, action or inaction by an employee that may detract from maintaining order are prohibited. C/O Rourki had a duty to stop C/O Lamb from tearing up my property once I reported to him that C/O Lamb was doing that. He had a duty to investigate the room when I came to the desk with as much of the property that had be torn up that I could carry in my hands, and asked him to see the rest of the torn up property that was in my room.

As Unit Officer, he had a duty to see that C/O Lamb signed the log book before he did a shakedown of my room, simce Lamb would be leaving his post to do so.


James Scott #124522

3

## Step II Prisoner/Parolee Grievance Response

Prisoner Name:          SCOTT                    Prisoner Number:     124522
Grievance Identifier Code:   2016 01 0221 19C

STEP-I FINDINGS
The grievance was responded to at Step I by Sergeant Houtz and reviewed by Captain Johnsen who found no violation of policy.

FINDINGS
The Step I response is thorough and contains necessary information. Upon review, prisoner has supplied no new information or evidence at Step II to disprove the Step I findings or require further investigation.

This grievance is denied at this level.


Signed:  _____        Date:  __3/4/2016_____
            Shawn Brewer, Warden

James Scott #124922 v. Barry Lamb et al.
USDC-ED No: 16-13462
Honorable Bernard A. Friedman
Magistrate Judge Anthony Anthony P. Patti


EXHIBITS 10

## 8. USE OF HEALTH CARE SERVICES

Employees shall not use the facility health care services except in cases of serious emergency, medical stabilization for serious on-the-job injuries, and Department authorized services, such as TB tests and Hepatitis B vaccinations. When the clinic facilities are used for an emergency or on-the-job injury, the employee is to be transferred as soon as practical to a physician or hospital. A complete report must be made by the clinic staff in each of these instances and sent to the appropriate Warden and Human Resource Office.

## 9. CLASS II INSUBORDINATION

Willful acts of employees that could seriously compromise the Department's ability to carry out its responsibilities, such as operation of safe and secure facilities or protection of the public, will be considered a serious form of insubordination. Investigation which confirms a violation of this rule shall result in discharge.

## 10. CLASS I INSUBORDINATION OR DISREGARD FOR AUTHORITY

Insubordination is showing disrespect toward a supervisor or the refusal to obey a supervisor's work related order.

Employees are prohibited from actions or inactions showing intentional disregard of authority or failing to immediately follow supervisory directives.

## 11. SEARCHES WHILE ON FACILITY PROPERTY

All employees are subject to authorized searches while on facility property. An employee who refuses to submit to a search while on facility property will be suspended immediately pending investigation. If the investigation supports the fact that an employee has refused to be searched that employee shall be discharged.

16

All searches in a correctional facility shall be conducted in accordance with the provisions of PD 04.04.110 "Search and Arrest in Correctional Facilities."

## 12. RESPONDING OR ASSISTING DURING AN EMERGENCY

All employees of the Department, regardless of classification, have security responsibility. Employees shall immediately respond to any request for help during an emergency, including practice mobilizations. An employee shall come to the assistance of an employee, offender, visitor, volunteer, etc. who is being assaulted or is in some other emergent situation.

## 13. ENFORCING RULES, REGULATIONS, POLICIES, AND PROCEDURES

All employees shall be familiar with, enforce, and follow all Department rules, regulations, policies, and procedures. An employee shall not undermine or interfere with the Department's efforts to enforce rules, regulations, policies, or procedures.

## 14. MAINTAINING ORDER

All employees shall assist in maintaining order. Any action or inaction by an employee that may detract from maintaining order is prohibited.

## 15. RULE RESCINDED AS OF THE EFFECTIVE DATE OF THIS HANDBOOK. NUMBER INTENTIONALLY NOT REUSED.

### CRIMINAL ACTS, CONTRABAND AND CONTROLLED SUBSTANCES

Work Rules #16 through #22 prohibit behavior involving criminal acts, contraband, and controlled substances both on and off duty. Controlled substances are defined in the Michigan Public Health Code.

20

James Scott #124322 v. Barry Lamb et al.
USDC-ED No: 16-13462
Honorable Bernard A. Friedman
Magistrate Judge Anthony Anthony P. Patti

**EXHIBITS 11**

MICHIGAN DEPARTMENT OF CORRECTIONS
**PROPERTY DISPOSITION SHEET**

4835-0209
CAJ-209 06/90

| PRISONER NAME | NUMBER | LOCK |
|---|---|---|
| J. Scott El | 124522 | G-32 |

The above prisoner: (Check one)   ☑ Has requested   ☐ Has agreed, in lieu of a hearing

☑ to have the below listed items picked up at the information desk, by the below designated person, on or before the date shown.  He further understands, and agrees, that if this property is not picked up by this date, it will be mailed, at his expense, to the person shown below.

☐ to have the below listed items mailed, at his expense, to the person shown below.

☐ to turn the below listed items over to the institution for disposal.

☐ to have a hearing on the below listed items.

The below listed items: (Check one)

☑ are being sent out at the prisoner's request

☐ are excess property

☐ are legal contraband

1 Second edition 1910 Black Law Dictionary - 14 court motion - Scott V. Graves - 12 legal books - 1 publish your own magazine guide book - 1 develop your web site Strategy book - 1 religious picture of Moorish Sister - 3 Moorish American Voice pamphlets - 1 typewriter ribbon

---

**INFORMATION DESK PICKUP**

| DESIGNATED PERSON |
|---|
| Clara Offord |

DATE TO BE PICKED UP

DATE PICKED UP

PICKED UP BY (Signature)

**MAILING ADDRESS**

NAME

STREET ADDRESS

CITY, STATE, ZIP

DATE MAILED

| PRISONER SIGNATURE | NUMBER | DATE |
|---|---|---|
| James Scott El | 124522 | 3/15/16 |
| PROPERTY ROOM OFFICER SIGNATURE | DATE 3·15·16 | |

DISTRIBUTION:   White – Kept at property room
Canary – Receiver signs and sends back to be matched with white copy in the property room
Pink – Kept by the receiver
Goldenrod – Senders copy








UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

JAMES SCOTT,

               Plaintiff,          Civil Action No. 14-12123
                                      Honorable John Corbett O'Meara
v.                               Magistrate Judge Elizabeth A. Stafford

CHERYL GROVES, et al.,

               Defendants.

_____/

**...ENYING PLAINTIFF'S MOTION FOR**
**...ND MOTION FOR SANCTIONS [R. 41]**

...ntly a Michigan Department of

...inst current

---

5:14-cv-12123-JCO-RSW   Doc # 29   Filed 12/04/14   Pg 1 of 2   Pg ID 367
MED (Rev. 12/13/10) Acknowledgment of Receipt of Documents – PRISONER

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

James Scott

              Plaintiff(s),               Case No. 5:14-cv-12123

v.                               Judge John Corbett O'Meara

Cheryl Groves, et al

              Defendant(s).

_____/

**...CKNOWLEDGMENT OF RECEIPT OF DOCUMENTS**

...n delivered to the U.S. Marshal Service for service of process in a prisoner

FILED
DEC 0 4 2014
CLERK'S OFFICE
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

JAMES SCOTT #124522,
          Plaintiff

                                        Case No. 5:14-cv-12123

vs                                      Hon. John Corbett O'Meara

                                        Mag. R. Steven Whalen

CHERYL GROVES, et al.,
          Defendants.

---

James Scott #124522              Kevin R. Himebaugh (P53374)
In Pro Per                       Attorney for MDOC Defendants
G. Robert Cotton Correctional Facility   Michigan Department of Attorney General
3500 N. Elm Road                 Corrections Division
Jackson, MI 49201                P.O. Box 30217
                                 Lansing, MI 48909
                                 (517) 335-7021

---

## PLAINTIFF'S RESPONSE IN OPPOSITION OF SUMMARY JUDGMENT

5:14-cv-12123-JCO-RSW   Doc # 7   Filed 06/13/14   Pg 1 of 1   Pg ID 43

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

JAMES SCOTT, 124522,

          Plaintiff,                    Case No.  14-12123  COPY

                                        Judge John Corbett O'Meara
v.
                                        Magistrate Judge R. Steven Whalen

CHERYL GROVES, ET AL,

          Defendant(s).

ORDER DIRECTING SERVICE WITHOUT PREPAYMENT OF

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES SCOTT,

Plaintiff,

No. 14-12123

v.

District Judge John Corbett O'Meara
Magistrate Judge R. Steven Whalen

CHERYL GROVES, ET AL.,

Defendants.

_____ /

**⁀ᴿ DIRECTING SERVICE WITHOUT PREPAYMENT OF COSTS AND
⁀ᴿ MICHIGAN DEPARTMENT OF CORRECTIONS TO PROVIDE
CERTAIN INFORMATION**

⁀ ᵗⁱᶠᶠ may proceed *in forma pauperis* and
ᵗʰᵉ appropriate

---

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES SCOTT #124522
Plaintiff,

Case No. 5:14-cv-12123

vs

Hon. John Corbett O'Meara

Mag. Judge Elizabeth A. Stafford

CHERYL GROVES, et al.,
Defendants.

---

**CERTIFICATE OF SERVICE**

I James Scott, certify that I have mailed to the attorney for
Defendants, Kevin R Himebaugh (P53374), Michigan Department of Attorney
General, Corrections Division, P.O. Box 30217, Lansing, MI 48909, a copy of
Plaintiff's Motion for appointment of counsel with brief by given it to a staff
member at ICF facili...

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

JAMES SCOTT,

              Plaintiff,          Civil Action No. 14-12123
                                  Honorable John Corbett O'Meara
v.                                Magistrate Judge Elizabeth A. Stafford

CHERYL GROVES, et al.,

              Defendants.
                                        /

**¬DER GRANTING PLAINTIFF'S MOTION**
**¬¬EMENT OF TIME FOR SERVICE [28]**

              ¬¬¬signed to resolve all pretrial

5:14-cv-12123-JCO-RSW   Doc # 29   Filed 12/04/14   Pg 2 of 2   Pg ID 368

AO 398 (Rev. 01/09) Notice of a Lawsuit and Request to Waive Service of a Summons

UNITED STATES DISTRICT COURT
for the
Eastern District of Michigan

James Scott

                              Plaintiff     Civil Action No. 5:14-cv-12123

                   v.                       Honorable John Corbett O'Meara

Cheryl Groves, et al

                              Defendant

**¬TICE OF A LAWSUIT AND REQUEST TO WAIVE SERVICE OF A SUMMONS**

                    Address provided to the Marshals

¬fendant is a corporation, partnership, or association - an officer or agent authorized to receive service)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

James Scott, 124522,

       Plaintiff,

v.

Cheryl Groves, et al,

       Defendant(s).

_____/

Case No.   14-12123

Judge John Corbett O'Meara

Magistrate Judge Elizabeth A. Stafford

### ORDER DIRECTING SERVICE WITHOUT PREPAYMENT OF COSTS AND AUTHORIZING THE UNITED STATES MARSHAL TO COLLECT COSTS AFTER SERVICE IS MADE

_____ laintiff(s) may proceed in forma pauperis. The Court, therefore, ORDERS
_____ ate papers in this case on defendant(s) without prepayment of the
_____ and customary costs from plaintiff(s) after effecting

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES SCOTT #124522,
      Plaintiff

vs

CHERYL GROVES, et al ,
      Defendants

Case No. 5:14-cv-12123

Hon. John Corbett O'Meara

Mag. R. Steven Whalen

| James Scott #124522<br>In Pro Per<br>G. Robert Cotton Correctional Facility<br>3500 N. Elm Road<br>Jackson. MI 49201 | Kevin R. Himebaugh (P53374)<br>Attorney for MDOC Defendants<br>Michigan Department of Attorney General<br>Corrections Division<br>P.O. Box 30217<br>Lansing, MI 48909<br>(517) 335-7021 |
|---|---|

RETURN OF REQUESTED

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

JAMES SCOTT #124522,

    Plaintiff,              NO. 5:14-cv-12123

v                       HON. JOHN CORBETT O'MEARA

CHERYL GROVES, *et al.*,    MAG. R. STEVEN WHALEN

    Defendants.

---

| | |
|---|---|
| James Scott #124522<br>*In Pro Per*<br>G. Robert Cotton Correctional Facility<br>3500 N. Elm Road<br>Jackson, MI 49201 | Kevin R. Himebaugh (P53374)<br>Attorney for MDOC Defendants<br>Michigan Department of Attorney General<br>Corrections Division<br>P.O. Box 30217<br>Lansing, MI 48909<br>(517) 335-7021 |

---

## APPEARANCE OF COUNSEL

Please enter our appearance

**Defendants** ...

above ...

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES SCOTT #124522
      Plaintiff,

                       Case No. 5:14-cv-12123

vs                   Hon. John Corbett O'Meara

                       Mag. R. Steven Whalen

CHERYL GROVES, et al.,
      Defendants.

---

| | |
|---|---|
| James Scott #124522<br>In Pro Per<br>G. Robert Cotton Corr. Facility<br>3500 N. Elm Road<br>Jackson, MI 49201 | Kevin R. Himebaugh (P53374)<br>Attorney for MDOC Defendants<br>Michigan Department of Attorney General<br>Corrections Division<br>P.O. Box 30217<br>Lansing, MI 48909<br>(517) 335-7021 |

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

JAMES SCOTT #124522
          Plaintiff,

                                        Case No. 5:14-cv-12123

vs                                      Hon. John Corbett O'Meara

                                        Mag. R. Steven Whalen

CHERYL GROVES, et al.,
          Defendants.

James Scott #124522              Kevin R. Himebaugh (P53374)
  Pro Per                        Attorney for MDOC Defendants
  ...bert Cotton Correctional Facility  Michigan Department of Attorney General
       ...m Road                 Corrections Division
          ...9201               P.O. Box 30217
                                 Lansing, MI 48909
                                 (517) 335-7021

                    ...R'S BRIEF IN SUPPORT OF
                       ...' FOR DISCOVERY

                           ...nderlying Rule 56(f), district

CM/ECF - U.S. District Court:mied                    ...holding parties

                                              Page 1 of 4

                                     IFP,LR11.2_NOTICE

**U.S. District Court**
**Eastern District of Michigan (Ann Arbor)**
**CIVIL DOCKET FOR CASE #: 5:14-cv-12123-JCO-RSW**

Scott v. Groves et al
Assigned to: District Judge John Corbett O'Meara
Referred to: Magistrate Judge R. Steven Whalen          Date Filed: 05/22/2014
Cause: No cause code entered                             Jury Demand: Plaintiff
                                                         Nature of Suit: 550 Prisoner: Civil
                                                         Rights
                                                         Jurisdiction: Federal Question

**Plaintiff**

**James Scott**

                              represented by **James Scott**
                                              124522
                                              G. ROBERT COTTON
                                              CORRECTIONAL FACILITY
                                              3500 N. ELM ROAD
                                              JACKSON, MI 49201
                                              PRO SE

V.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES SCOTT #124522
       Plaintiff,

                          Case No. 5:14-cv-12123

vs                          Hon. John Corbett O'Meara

                          Mag. Judge Elizabeth A. Stafford

CHERYL GROVES, et al.,
       Defendants

| James Scott #124522 | Kevin R. Himebaugh (P53374) |
|---|---|
| In Pro Per | Attorney for MDOC Defendants |
| G. Robert Cotton Corr. Facility | Michigan Department of Attorney General |
| 3500 N. Elm Road | Corrections Division |
| Jackson, MI 49201 | P.O. Box 30217 |
| | Lansing, MI 48909 |
| | (517) 335-7021 |

## PLAINTIFF'S MOTION REQUESTING SANCTION
## AGAINST THE ATTORNEY FOR DEFENDANTS

Plaintiff, James Scott mo~

P. 11(b). "I~

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

JAMES SCOTT #124522,
       Plaintiff

                          Case No. 5:14-cv-12123

vs                          Hon. John Corbett O'Meara

                          Mag. R. Steven Whalen

CHERYL GROVES  et al.
       Defendants.

| James Scott #124522 | Kevin R. Himebaugh (P53374) |
|---|---|
| In Pro Per | Attorney for MDOC Defendants |
| G. Robert Cotton Correctional Facility | Michigan Department of Attorney General |
| 3500 N. Elm Road | Corrections Division |
| Jackson, MI 49201 | P O  Box 30217 |
| | Lansing  MI 48909 |

NO. 15-1992

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

JAMES SCOTT
        Plaintiff-Appellate,

v

CHERYL GROVES; GAYLE LEACH;
RAYMOND D. BOOKER; RANDALL HAAS;
CORBY DEFOREST; KEN RYAN,
        Defendant-Appellees.

5:14-cv-12123-JCO-EAS   Doc # 48   Filed 04/24/15   Pg 1 of 5   Pg ID 463

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

JAMES SCOTT #124522,

    Plaintiff,

                        NO. 5:14-cv-12123
v

CHERYL GROVES, *et al.*,      HON. JOHN CORBETT O'MEARA

    Defendants.           MAG. ELIZABETH A. STAFFORD

James Scott #124522
*In Pro Per*
G. Robert Cotton Correctional Facility
3500 N. Elm Road
Jackson, MI 49201

Kevin R. Himebaugh (P53374)
Attorney for MDOC Defendants
Michigan Department of Attorney General
Corrections Division
P.O. Box 30217

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

JAMES SCOTT #124522,

      Plaintiff,               NO. 5:14-cv-12123

v                         HON. JOHN CORBETT O'MEARA

CHERYL GROVES, *et al.*,     MAG. R. STEVEN WHALEN

      Defendants.

---

James Scott #124522
*In Pro Per*
G. Robert Cotton Correctional Facility
3500 N. Elm Road
Jackson, MI 49201

Kevin R. Himebaugh (P53374)
Attorney for MDOC Defendants
Michigan Department of Attorney General
Corrections Division
P.O. Box 30217
Lansing, MI  48909
(517) 335-7021

---

## MDOC DEFENDAN̄T̄S̄

    M̄D̄

James Scott #124322 v. Barry Lamb et al.
USDC-ED No: 16-13462
Honorable Bernard A. Friedman
Magistrate Judge Anthony Anthony P. Patti


**EXHIBITS 12**

MICHIGAN DEPARTMENT OF CORRECTIONS
**PRISONER/PAROLEE GRIEVANCE FORM**

4835-4247 10/94
CSJ-247A

Date Received at Step I ___6/3/16___   Grievance Identifier: ___JCF16-06 1951 17A___

Be brief and concise in describing your grievance issue. If you have any questions concerning the grievance procedure, refer to PD 03.02.130 and OP 03.02.130 available in the prison Law Library.

| Name (print first, last) | Number | Institution | Lock Number | Date of Incident | Today's Date |
|---|---|---|---|---|---|
| James Scott, El | 124522 | JCF | C-32 | 5/27/16 | 5/30/16 |

What attempt did you make to resolve this issue prior to writing this grievance? On what date? ___5/27/16/___
If none, explain why.

I attempted to talk with Lamb, he said write a grievance

State problem clearly. Use separate grievance form for each issue. Additional pages, using plain paper, may be used. Four copies of each page and supporting documents must be submitted with this form. The grievance must be submitted to the Grievance Coordinator in accordance with the time limits of OP 03.02.130.

On 5/27/2016 Officer Lamb appeared at the door of room C-32, were I look. Officer Lamb said that he had told me to stop writing complaints, and that if I thought that writing one against him would change things that I was wrong, and told me to step out of the room. He went into the room and took it apart. I have three footlockers that are full of legal papers, and each one was open and the papers were thrown about the room like a paper factory that had been hit by a strong wind; some of the legal motions were torn up. As Officer Lamb was leaving the room, he had a lot of property in his arms. I asked him what did have, and he said that I would read about it. I asked him if he was going to leave my room like it was, he said, write another grievance. As I was about to enter the room, officer Schultz was walking down the hall and I asked him to take a look at what officer Lamb had done to my property, Schultz said that as far as he know, I could have done it my self, and kept walking. When I entered the room I had to pick up papers and books as I walked. I notice that a house that I was making was gone, a pad lock was missing from one of the footlockers and lot of my hobby craft items were gone.
Later that night, officer Lamb put a contraband removal notice under the door.

Continue Page 1 of 2 _____   _____
                                              Grievant's Signature

RESPONSE (Grievant Interviewed? ☒ Yes ☐ No    If No, give explanation. If resolved, explain resolution.)

See Attached.

_____   ___6-1-16___   _____   ___6/15/16___
Respondent's Signature         Date            Reviewer's Signature          Date
_____   (SS-2)   _____   (SS-3)
Respondent's Name (Print)   Working Title   Reviewer's Name (Print)   Working Title

| Date Returned to Grievant 6/17/16 | If resolved at Step I, Grievant sign here. Resolution must be described above. | Grievant's Signature | Date |
|---|---|---|---|

DISTRIBUTION: White, Green, Canary, Pink — Process to Step One; Goldenrod — Grievant

It alleged that he had removed a altered master lock, one pair of brown gloves and a cardboard light box. I went to the desk with my hobby craft card. I provided proof that the items were mine, and officer Lamb only gave me a jar of paint and a few markers.

Officer Lambs action was in retaliation for grievance JCF 16/01/0221/19C, which I wrote against him.

Officer Lamb was in violation of the Employee Handbook, rule 3, page 12 Discrimination/Harassment - Employees are prohibited from retaliation against any one who raises or files a complaint on or reports harassment. He was in violation of PD 02.03.107, An employee shall not engage in action that could constitute the use of his/her position for personal gain. It seem that no one is stopping officer Lamb from Harassing me for filing complaints. I want him removed from his job and $300,000.

_James Scott_
Grievant

2

## Step I Grievance Response

| Grievance Number: | J | C | F | 2 | 0 | 1 | 6 | 0 | 6 | 1 | 0 | 5 | 1 | 1 | 7 | G |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Prisoner Name: | Scott |
| Prisoner Number: | 124522 |

Prisoner ☒ was ☐ was NOT interviewed.  GIVE REASON:

**SUMMARY OF COMPLAINT:**

Prisoner Scott claims that Officer B. Lamb shook his house down and left it a mess.  Prisoner Scott claims that he will continue to write these until Officer lamb pays for the law books that Scott claims were destroyed by Lamb the last time he shook his house down.

**INVESTIGATION INFORMATION:**

Prisoner Scott told me that the last grievance that he wrote on Officer B. Lamb was finished and was found to have insufficient findings.
Officer B. Lamb stated in his written response (attached) that he did not tear up any paperwork, and even wrote a contraband removal on the items that he did confiscate during his shakedown..  Officer B. Lamb stated that he place items back in place after searches were completed.
Officer Schultz statement claims that when he observed cell G-32 (Scotts Cell) that it was not a mess and that Scott was sitting in his room reading papers.

**APPLICABLE POLICY, PROCEDURE, ETC.:**

03.03.130 Humane Treatment and Living Conditions for Prisoners

**SUMMARY:**

I spoke with prisoner Scott and instructed him that there would be insufficient evidence to support his claim.  I instructed Scott that if this happens he needs to secure his cell door and report this to the supervisor in the area.  This grievance has insufficient evidence to support Scott's claim so this grievance is being denied at step I.

| RESPONDENT NAME: | Lt. J. Lavigne | TITLE: | CSS-2 |
|---|---|---|---|
| RESPONDENT SIGNATURE: | | DATE: | 6/15/16 |
| REVIEWER NAME: | Capt. B. Johnsen | TITLE: | CSS-3 |
| REVIEWER SIGNATURE: | | DATE: | 6/15/16 |

G32



STATE OF MICHIGAN
### DEPARTMENT OF CORRECTIONS
LANSING

RICK SNYDER
GOVERNOR

HEIDI E. WASHINGTON
DIRECTOR

## STEP III GRIEVANCE DECISION

81945

| | |
|---|---|
| **To Prisoner:** | Scott          **#124522** |
| **Current Facility:** | JCF |
| **Grievance ID #:** | JCF-16-06-1051-17g |
| **Step III Received:** | 7/25/2016 |

Your Step III appeal has been reviewed and considered by the Grievance Section of the Office of Legal Affairs in accordance with PD 03.02.130, "Prisoner/Parolee Grievances". Upon examination it has been determined that your issue was in fact considered, investigated, and a proper decision was rendered.

## THE STEP III APPEAL IS DENIED.

THIS DECISION CANNOT BE APPEALED WITHIN THE DEPARTMENT.

*Richard D. Russell,*

**Richard D. Russell,**
**Manager Grievance Section,**
**Office of Legal Affairs**

**Date Mailed:**     JUL 2 6 2016

cc: Warden, Filing Facility:

GRANDVIEW PLAZA • P.O. BOX 30003 • LANSING, MICHIGAN  48909
www.michigan.gov/corrections • (517) 335-1426

MICHIGAN DEPARTMENT OF CORRECTIONS
**PRISONER/PAROLEE GRIEVANCE APPEAL FORM**

4835-4248  5/09
CSJ-247B

Date Received by Grievance Coordinator
at Step II: _6/28/16_

Grievance Identifier: | J C F | 1 6 | 0 6 | 1 0 5 | 1 1 | 7 9 |

**INSTRUCTIONS:** THIS FORM IS ONLY TO BE USED TO APPEAL A STEP I GRIEVANCE.
The white copy of the Prisoner/Parolee Grievance Form CSJ-247A (or if you have not been provided
with a Step I response in a timely manner) **MUST** be attached to the white copy of this form if you appeal it at both Step
II and Step III.

RECEIVED MDOC
JUL 25 2016
Office of Legal Affairs

If you should decide to appeal the Step I grievance response to Step II, your appeal should be directed to: _____
_James_ by _7/5/16_. If it is not submitted by this date, it will be considered terminated.

If you should decide to appeal the response you receive at Step II, you should send your Step III Appeal to the Director's
Office, P.O. Box 30003, Lansing, Michigan, 48909.

| Name (Print first, last) | Number | Institution | Lock Number | Date of Incident | Today's Date |
|---|---|---|---|---|---|
| James Scott El | 124522 | JCF | G-32 | 5/27/16 | 6/25/16 |

**STEP II — Reason for Appeal**

Lt. J. Lavigne acknowledged that Officer B. Lamb had torn up inmate Robinson 778345
room, before he torn up my room. He acknowledged that Officer Lamb did not deny the
allegations of what he had said as a reason for tearing up my room. Lt. J. Lavigne
acknowledged that inmate Robinson, 778345 was a witness for me in grievance JCF
16/01/0221/19C, which was wrote against Officer Lamb. As stated by Lt. Lavigne, the first
grievance was found to have insufficient evidence; therefore, he denied this one on the same
basis. The evidence as stated above gives sufficient evidence to show that Officer Lamb
took retalitory actions against me for writing the grievance against him. This is not only a
violation of PD 03.03.130, it violated my First Amendment Right of the U.S. Constitution.

**STEP II — Response**

Date Received by
Step II Respondent: _6/28/16_

_S. Green_                   _[signature]_              _7/19/16_
Respondent's Name (Print)    Respondent's Signature        Date

Date Returned to
Grievant: _7/21/16_

**STEP III — Reason for Appeal**   This grievance is mailed on 7/21/16.
The evidence in this grievance clearly reveals a violation of policy 03.03.130,
as well as my First Amendment Right.
A simple reading of PD 03.03.130 K. 3-4., shall reveal the clear violation, and
I ask that you grant the requested relief as stated at step one.

**NOTE: Only a copy of this appeal and the response will be returned to you.**

**STEP III** — Director's Response is attached as a separate sheet.

DISTRIBUTION:  White – Process to Step III;  Green, Canary, Pink – Process to Step II;  Goldenrod – Grievant

## Step II Prisoner/Parolee Grievance Response

Prisoner Name:          SCOTT                    Prisoner Number:     124522
Grievance Identifier Code:   2016 06 1051 17G

**STEP-I FINDINGS**

The grievance was responded to at Step I by Lieutenant LaVigne and reviewed by Captain Johnsen who found no violation of policy.

**FINDINGS**

The Step I response is thorough and contains necessary information. Upon review, prisoner has supplied no new information or evidence at Step II to disprove the Step I findings or require further investigation.

This grievance is denied at this level.


Signed: _____          Date:   7/19/2016_____
             Shawn Brewer, Warden



US POSTAGE FIRST CLASS

Hire a Veteran

FILED
FEB 22 2017
CLERK'S OFFICE
U.S DISTRICT COURT

RECEIVED
FEB 2 2 2017
CLERK'S OFFICE
DETROIT

United States District Court
For The Eastern District Of Michigan
Office Of The Clerk
Theodore Levin United States Courthouse
231 West Lafayette Blvd. - Room 564
Detroit, Michigan 48226

James Scott #124522
G. Robert Cotton Correctional Facility
3500 N. Elm Road
Jackson, MI 49201

U.S. MARSHAL