UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES SCOTT,

                Plaintiff                        Case No. 2:16-CV-13462

                                            District Judge Bernard Friedman

v.                                       Magistrate Judge Anthony P. Patti

BARRY LAMB and
MARK ROARK,

                Defendants.
_____/

## REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DE 17)

**I.**    **RECOMMENDATION**:  The Court should grant in part and deny in part

Defendants' motion for summary judgment (DE 17), as described in further detail

below.

**II.**    **REPORT:**

    **A.**    **Background**[1]

---

[1] As this case involves allegations of First Amendment retaliation, it is important to note that Plaintiff is no stranger to this Court, as he has been or is a party to several other cases here.  *See* Case No. 2:90-cv-71354-HWG-PJK (*Scott v. Pitcher*, Habeas Corpus); Case No. 2:04-cv-73508-GER-MKM (*Cotten v. Burt, et al.* (Prisoner Civil Rights, intervenor Plaintiff)); 2:06-cv-13313-AC-DAS (*Scott v. Freeburn* (Prison Conditions)); Case No. 2:10-cv-11934-SJM-RSW (*Scott v. Western, et al.* (Prisoner Civil Rights); and Case No. 5:14-cv-12123-JCO-EAS (*Scott v. Groves, et al.* (Prisoner Civil Rights).

James Scott is currently incarcerated at the Michigan Department of Corrections (MDOC)'s Thumb Correctional Facility (TCF) in Lapeer, Michigan.[2] On September 23, 2016, while incarcerated at the G. Robert Cotton Correctional Facility (JCF) in Jackson, Michigan, Scott filed the instant lawsuit *in pro per* against two JCF correctional officers, Barry Lamb and M. Rourke (Mark Roark). (DE 1; *see also* DE 6.)  Plaintiff is proceeding *in forma pauperis*.  On December 6, 2016, Plaintiff filed an amended, verified complaint against the same defendants but added a claim against Defendant Lamb for destruction and seizure of legal materials."  Plaintiff sues Defendants in their individual capacities, seeking declaratory, compensatory, punitive, presumed and/or exemplary and nominal damages.  (DE 15.)[3]

**B.    Instant Motion**

Judge Friedman has referred this case to me for pretrial matters.  Currently before the Court is Defendants' motion for summary judgment based on Plaintiff's failure to exhaust administrative remedies, failure to state a claim, and

---

[2] *See* www.michigan.gov/corrections, "Offender Search."  (DE 25.)

[3] On January 17, 2017, Defendants withdrew their initial motion for summary judgment, which concerned Plaintiff's original complaint.  (DE 12, DE 21; *see also* DE 14, DE 16.)  Plaintiff's amended complaint is dated November 29, 2016, appears to have been submitted to prison authorities for mailing that same day, and was filed with this Court on December 6, 2016.  (DE 15 at 7, DE 22 at 33.)

governmental immunity.  (DE 17; *see also* DE 19.)  A timely response and reply were filed.  (DE 20, DE 22, DE 24.)

### C.    Fed. R. Civ. P. 56

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the case under governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party."  *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (internal citations omitted).

"The moving party has the initial burden of proving that no genuine issue of material fact exists . . . ."  *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); cf. Fed. R. Civ. P. 56 (e)(2) (providing that if a party "fails to properly address another party's assertion of fact," then the court may "consider the fact undisputed for the purposes of the motion.").  "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'"  *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec.*

3

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  The nonmoving

party must "make an affirmative showing with proper evidence in order to defeat

the motion."  *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also*

*Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir.

2011) ("The nonmovant must, however, do more than simply show that there is

some metaphysical doubt as to the material facts . . . .   [T]here must be evidence

upon which a reasonable jury could return a verdict in favor of the non-moving

party to create a genuine dispute.") (internal quotation marks and citations

omitted).

Summary judgment is appropriate if the evidence favoring the nonmoving

party is merely colorable or is not significantly probative.  *City Management Corp.*

*v. United States Chem. Co.*, 43 F.3d 244, 254 (6th Cir. 1994).  In other words,

summary judgment is appropriate when "a motion for summary judgment is

properly made and supported and the nonmoving party fails to respond with a

showing sufficient to establish an essential element of its case. . . ."  *Stansberry*,

651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 371, 322-23 (1986)).

    **D.**    **Discussion**

        **1.**    **Plaintiff's First Amendment retaliation and access to courts claims are based upon the alleged events of January and May 2016.**

Plaintiff alleges that Defendants have retaliated against him in violation of the First Amendment to the U.S. Constitution.  (DE 15 ¶ 1.)  Specifically, he alleges that Defendants retaliated against him "for exercising his right to petition for redress of grievances[.]"  (DE 15 ¶¶ 14-17.)  Plaintiff also alleges that Defendant Lamb "denied Plaintiff his right to access the court when he destroyed and seized legal materials[.]"  (DE 15 ¶¶ 18-19.)

The alleged facts underlying these claims occurred primarily on two different dates.  First, Plaintiff claims that, on January 25, 2016, when he was signing for legal mail in *Scott v. Groves, et al.* (Case No. 5:14-cv-12123-JCO-EAS), Defendant Lamb told Plaintiff "he need[ed] to find something else to do other than filing lawsuits against MDOC's officials."  (DE 15 ¶ 7.)  Thereafter, Defendant Lamb, "went into Plaintiff's room and began ransacking it and destroying Plaintiff's personal property[,]" including motions he had filed in the *Groves* case.  (DE 15 ¶ 8.)  Plaintiff informed Defendant Roark, who responded that Defendant Lamb was "just doing his job[,]" and stated that he "was not getting in the way . . . ."  (DE 15 ¶ 9.)  Plaintiff alleges that inmate Williams and inmate Robinson observed Defendant Lamb destroying Plaintiff's books and paper and further alleges that inmate Reyes witnessed Defendant Lamb again explain to Plaintiff that, "he should find something else to do other th[a]n filing lawsuits

against MDOC's officials."  (DE 15 ¶ 10; *see also* DE 17-2 at 29, DE 22 at 45 (William's Affid.); DE 17-2 at 28, DE 22 at 50 (Reyes's Affid.)).  According to Plaintiff, Defendant Lamb was working on the Level 1 side of JCF and "entered level 2 G-Unit for the sole purpose of violating Plaintiff's First Amendment Righ[t] to be free from retaliation for filing lawsuits in court."  (DE 15 at ¶ 11.)

Second, Plaintiff claims that, on May 27, 2016, Defendant Lamb tore up the room of inmate Joshua Robinson, as well as Plaintiff's room, seemingly in retaliation for Plaintiff having filed JCF-16-01-0221-19c and resulting in the taking or destruction of certain litigation-related documents.  (DE 15 at ¶¶ 12-13; *see also* DE 22 at 47-48 (Robinson Affid.).)  On the same date, Plaintiff was issued a misconduct report.  (DE 17-5 at 5.)  He was found guilty of this violation on June 3, 2016, for which he received a one-day loss of privileges.  (DE 17-5 at 4.)

### 2.    Plaintiff has exhausted his available administrative remedies as to his retaliation and access to courts claims.

#### a.    Exhaustion under the PLRA

Under the PLRA, a prisoner may not bring an action "with respect to prison conditions under section 1983 of this title, or any other Federal law . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Congress enacted this provision to address the "outsized share" of prisoner litigation filings and to ensure that "the flood of nonmeritorious claims does not

submerge and effectively preclude consideration of the allegations with merit."

*Jones v. Bock*, 549 U.S. 199, 203-04 (2007). Put another way, the purpose of

§ 1997e(a) is to "reduce the quantity and improve the quality of prisoner suits."

*Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). In addition, exhaustion "gives an

agency an opportunity to correct its own mistakes with respect to the programs it

administers before it is haled into federal court, and it discourages disregard of [the

agency's] procedures." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (internal

quotations and citations omitted).

  "There is no question that exhaustion is mandatory under the PLRA and that

unexhausted claims cannot be brought into court." *Jones*, 549 U.S. at 211. The

prison's grievance process determines when a prisoner has properly exhausted his

or her claim. *Id.* at 219 ("The level of detail necessary in a grievance to comply

with the grievance procedures will vary from system to system, but it is the

prison's requirements, and not the PLRA, that define the boundaries of proper

exhaustion."). Even where a prisoner has made some attempts to go through the

prison's grievance process, "[t]he plain language of the statute makes exhaustion a

precondition to filing an action in federal court." *Freeman v. Francis*, 196 F.3d

641, 645 (6th Cir. 1999). The prisoner "may not exhaust his [or her]

administrative remedies during the pendency of the federal suit." *Id.* (citations

omitted); *see also Woodford*, 548 US at 95 ("A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction . . . ."). However, "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216.  Instead, failure to exhaust administrative remedies is an affirmative defense under the PLRA.  As such, Defendants bear the burden of proof on exhaustion.  *Surles v. Andison*, 678 F.3d 452, 456 (6th Cir. 2012).

### b.    Grievance Procedures at the MDOC

The administrative remedy for prisoner and parolee grievances is set forth at MDOC PD 03.02.130, effective July 9, 2007.  (DE 17-3.)  As a general matter, grievances raising certain non-grievable issues shall be rejected, such as "[d]ecisions made in hearings conducted by hearing officers of the State Office of Administrative Hearings and Rules, including property disposition, and issues directly related to the hearing process . . ." and "[d]ecisions made in minor misconduct hearings, including property disposition."  *Id*. ¶ F (DE 17-3).

The grievance process is made up of several steps.  First, the inmate must attempt to resolve any issue with the staff member involved within two days of becoming aware of a grievable issue.  (DE 17-3, ¶ P.)  If the issues are not resolved

8

within five days, the inmate may file a Step 1 grievance using the appropriate

form.  The inmate should receive a response within fifteen days of filing his or her

grievance.  If the inmate is dissatisfied with the disposition of the grievance, or

does not receive a response ten days after the due date, he or she may file a Step II

grievance using the appropriate form.  (*Id*. at ¶ BB.)  Similarly, if the inmate is

dissatisfied with the Step II response or does not receive a response within ten days

after the response was due, he or she may file a Step III grievance.  (*Id*. at ¶ FF.)

Step III grievances are "logged on a computerized grievance tracking system."  (*Id*.

at ¶ GG.)

As the Sixth Circuit has explained, the matter is fully exhausted after the

disposition of the Step III grievance.  *Surles*, 678 F.3d at 455 ("A grievant must

undertake all steps of the MDOC process for his grievance to be considered fully

exhausted.").

### c.    Plaintiff's JCF Grievances appealed to Step III

Plaintiff's MDOC Prisoner Step III Grievance Report indicates that he

appealed four JCF grievances to Step III, three of which occurred during the time

at issue in this lawsuit:

- **JCF-16-01-0221-19c:**  This grievance was received at Step I on
  January 29, 2016.  It concerns the alleged events of January 25, 2016
  and seems to mention both Defendant Lamb and Defendant Roark.
  (DE 17-2 at 20-30, DE 22 at 52-59)

- **JCF-16-03-0475-27z:**  This grievance was received at Step I on March 7, 2016.  It concerns the alleged events of March 5, 2016 and alleges that Hobbycraft Director Kitson "frustrated [Plaintiff's] legal effort to preserve the evidence of [his] legal property which had been torn up."  (DE 17-2 at 13-19)

- **JCF-16-06-1051-17G:**  This grievance was received at Step I on June 2, 2016.  It concerns the alleged events of May 27, 2016 and alleges that Officer Lamb was retaliating for Plaintiff having filed JCF-16-01-0221-19c.  (DE 17-2 at 7-12, DE 22 at 77-82)

(DE 17-2 at 3-6.)[4]

> **d.    JCF-16-01-0221-19c exhausts Plaintiff's available administrative remedies as to his claim that the alleged events of January 25, 2016 were in retaliation for previously filed lawsuits.**

Defendants argue that Plaintiff's claims regarding the alleged events of January 25, 2016 should be dismissed, because "Plaintiff did not attempt to resolve the grievance informally with either affected party . . ." as is required by MDOC PD 03.02.130.  (DE 17 at 14.)  This policy directive provides that a grievance may be rejected if:

> The grievant did not *attempt to resolve the issue* with the staff member involved prior to filing the grievance unless prevented by circumstances beyond his/her control or if the issue falls within the jurisdiction of the Internal Affairs Division in Operations Support Administration.

---

[4] JCF-13-08-1316-02e would have been initiated during August 2013 and, therefore, would not relate to the alleged events underlying the instant complaint, which occurred during 2016.

10

(DE 17-3 ¶ G(2) (emphasis added)).  The policy directive further provides:

> Prior to submitting a written grievance, the grievant shall *attempt to resolve* the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control or if the issue falls within the jurisdiction of the Internal Affairs Division in Operations Support Administration. If the issue is not resolved, the grievant may file a Step I grievance. The Step I grievance must be filed within five business days after the grievant attempted to resolve the issue with appropriate staff.

(DE 17-3 ¶ P (emphasis added)).

In his Step I grievance form for grievance identifier JCF-16-01-0221-19c, Plaintiff represented, "[o]n [January 25, 2016][,] I informed Officer Lamb that I would be writing a grievance on him for destroying my legal property[.]"  (DE 17-2 at 23, DE 22 at 52.)  In his un-notarized "affidavit," Plaintiff elaborates on this attempt.  (*See* DE 22 at 43 ¶ 3.)  At that point, if the MDOC was dissatisfied with the sufficiency of this "attempt" at informal resolution, then it could have rejected the grievance on the basis of MDOC PD 03.02.130 ¶ G(2) and/or ¶ P, as set forth above.  It did not.  Instead, respondent R. Houtz (and reviewer B. Johnsen) addressed the substance of Plaintiff's grievance, ultimately concluding that, "There is not suffic[ient] evidence to support the claim made by inmate Scott."  (DE 17-2 at 24, DE 22 at 54.)

Defendants' arguments on this point are unavailing.  To begin, they rely upon *Jarrett v. Smith*, No. 2:13-CV-14516, 2014 WL 1308819, at *5 (E.D. Mich. Mar. 28, 2014).  However, while Jarrett "failed to complete the grievance process in accordance with the MDOC's grievance policy[,]" that case involved grievances which were rejected or denied for not following "the proper procedure."  Here, Plaintiff's Step I grievance was not rejected for a failure to comply with the grievance procedure.  It was denied in substance.  As this Court has previously stated, "a failure to comply with ¶ P is not the basis on which plaintiff's . . . grievance was rejected."  *Perry v. Green*, No. 08-12740, 2009 WL 814447, at *15 (E.D. Mich. Mar. 26, 2009) (Duggan, J., *concurring with report and recommendation of* Komives, M.J.) (citing *Broder v. Correctional Medical Services, Inc.,* No. 03–75106, 2008 WL 704229, *2 (E.D. Mich. Mar.14, 2008) (Battani, J.) (wherein the MDOC "reviewed and decided the grievances on the merits[,]" and "did not reject them as untimely.")).  Moreover, while Defendants cite to the Supreme Court's definition of "waiver" in its discussion of limitation on appellate authority under Fed. R. Crim. P. 52(b), *see United States v. Olano*, 507 U.S. 725, 733 (1993), Defendants do not cite authority for the proposition that Defendants, themselves, have a "right to object to Plaintiff's non-compliance with the exhaustion procedural requirements . . . ."  (DE 17 at 15.)  Finally, if the

12

MDOC was dissatisfied with the sufficiency of Plaintiff's "attempt" at informal resolution, either because it did not mention Defendant Roark or was insufficient as to Defendant Lamb, then it could have denied or rejected Plaintiff's grievance on such a basis.  That is to say, the MDOC's "informal effort" requirement is not rendered "meaningless," (DE 17 at 16), when the MDOC *chooses to enforce* it.

Here, Plaintiff has alleged that the events of January 25, 2016 were in retaliation for previously filed lawsuits, such as *Scott v. Groves, et al.* (Case No. 5:14-cv-12123-JCO-EAS).  (DE 15 ¶¶ 7-11.)  These claims are fairly encompassed by JCF-16-01-0221-19c, for which the Step I grievance has a "Date of Incident" of January 25, 2016, repeats many of the allegations made within the related portion of Plaintiff's complaint, and was addressed by the MDOC on the merits.  (DE 17-2 at 23-24, DE 22 at 52-54.)  Therefore, JCF-16-01-0221-19c exhausts Plaintiff's available administrative remedies as to his claim that the alleged events of January 25, 2016 were in retaliation for previously filed lawsuits.

> **e.    JCF-16-06-1051-17G exhausts Plaintiff's available administrative remedies as to his claim(s) concerning the alleged events of May 27, 2016, both to the extent he claims these events were in retaliation for previously filed grievances and to the extent he claims the events violated his right of access to the courts.**

As previously noted, Plaintiff claims that the alleged events of May 27, 2016 were: **(i)** in retaliation for Plaintiff having filed JCF-16-01-0221-19c, and **(ii)**

resulted in the taking or destruction of certain litigation-related documents. (DE 15 ¶¶ 12-13.) Defendants argue that Plaintiff's claims regarding the alleged events of May 27, 2016 should be dismissed, because "Plaintiff did not exhaust all of his administrative remedies for the alleged Defendant Lamb misconduct."

### i.    Retaliation for previously filed grievances

To the extent Plaintiff alleges that the events of May 27, 2016 were in retaliation for previously filed grievances, such as JCF-16-01-0221-19c (*see* DE 15 ¶¶ 14-17, 19), this claim has been administratively exhausted. Plaintiff's Grievance Identifier JCF-16-06-1051-17G – initiated in June 2016 - expressly states, among other things, that "Officer Lamb[']s action was in retaliation for grievance JCF 16/01/0221/19C, which I wrote against him." (DE 17-2 at 12, DE 22 at 78.) The grievance response summarized:

> I spoke with prisoner Scott and instructed him that there would be insufficient evidence to support his claim. I instructed Scott that if this happens he needs to secure his cell door and report this to the supervisor in the area. This grievance has insufficient evidence to support Scott's claim so this grievance is being denied at step I.

(DE 17-2 at 10-12, DE 22 at 77-79.) In his complaint, Plaintiff specifically alleges that, on May 27, 2016, in retaliation for Plaintiff filing Grievance Identifier JCF-16-01-0221-19c in January 2016, Defendant Lamb tore up inmate Robinson's room and Plaintiff's room. (DE 15 ¶¶ 12-13.)

14

In sum, the amended complaint's allegations concerning Plaintiff's room are the subject matter of Plaintiff's Step I grievance in JCF-16-06-1051-17G, which was appealed through Step III.  (DE 17-2 at 3, 10-12; DE 22 at 77-79.)  Thus, Plaintiff has exhausted his available administrative remedies as to his claim that Defendant Lamb's May 27, 2016 actions were in retaliation for an earlier filed grievance.

### ii.    Taking or destruction of certain litigation-related documents

Plaintiff alleges that "[s]ome of [the] documents which were taken or destroyed have prejudice[d] Plaintiff's litigation against a Dr. Hutchinson."  (DE 15 ¶ 13.)  To the extent Plaintiff alleges that the events of May 27, 2016 violated his right of access to the courts - by causing "a litigation-related detriment" such that he "can no longer meaningfully litigate against Dr. Hutchinson[,]" (*see* DE 15 ¶¶ 13, 18) - this claim has been administratively exhausted.  By way of background, the Sixth Circuit has explained:

> Prisoners have a right of access to the courts. *Bounds v. Smith,* 430 U.S. 817, 821[] (1977).  In order to state a claim for denial of meaningful access to the courts, however, plaintiffs must plead and prove prejudice stemming from the asserted violation.  Plaintiffs must demonstrate, for example, that the inadequacy of the prison law library or the available legal assistance caused such actual injury as the late filing of a court document or the dismissal of an otherwise meritorious claim.  *Lewis v. Casey,* 518 U.S. 343, [351] . . . (1996).

*Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996) ("Plaintiffs failed to allege any litigation-related detriment, and their claim was properly dismissed.").

Here, the Court must decide whether Plaintiff has properly exhausted such a claim with the detail required by the MDOC. *See Jones*, 549 U.S. at 217-219. MDOC PD 03.02.130 ¶ R provides "[t]he issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included." As this Court has previously acknowledged, "[n]othing in the policy directive requires a prisoner to state a legal cause of action." *Green v. Miller*, No. 13-CV-14247, 2014 WL 1846063, at *4 (E.D. Mich. May 8, 2014) (Friedman, J., *accepting and adopting report and recommendation of* Komives, M.J.). Furthermore, as the Sixth Circuit has explained, "it is sufficient for a court to find that a prisoner's Step I problem statement gave prison officials fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint." *Burton v. Jones*, 321 F.3d 569, 575 (6th Cir. 2003) *abrogated on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).[5]

_____

[5] In *Jones*, the Supreme Court stated that *Burton*'s "procedural rule" regarding identification of Defendants in the initial grievance, "lacks a textual basis in the

16

In this case, JCF-16-06-1051-17G was appealed through Step III, is based upon the events of May 27, 2016, and mentions that his footlockers were opened and his legal papers "were thrown about" and "some of the legal motions were torn up." (DE 17-2 at 3, DE 17-2 at 10, DE 22 at 77.)  In other words, "Plaintiff's grievance was sufficient to give prison officials fair notice of both a retaliation claim and an access to courts claim based on the same alleged conduct of defendant, and thus was sufficient to exhaust both his claims." *Green*, 2014 WL 1846063, at *5.  This is so, even though Plaintiff's Step I, Step II or Step III grievances in JCF-16-06-1051-17G do not mention a specific detriment to pending litigation. (DE 22 at 77-78, 81.)  Corrections officials here were not deprived of "time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter v. Nussle*, 534 U.S. 516, 525 (2002).  Within the *context of an internal grievance*, any prison official can and should be aware of the fact that scattering and tearing up an inmate's legal papers, including "legal motions," *may have* a detrimental effect upon an inmate's ability to litigate and may, therefore, deprive him of his access to the Court.

        **iii.    Defendants' arguments as to exhaustion of the May 27, 2016 claims somewhat miss the mark.**

PLRA[,]" and ultimately concluded that "exhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances." *Jones*, 549 U.S. at 217, 219.

Defendants take the position that "the facts involved in the May 27, 2016 alleged wrongdoing formed the underlying basis for the above Class III Misconduct[;]" therefore, Plaintiff was required "to file an appeal of the facility hearing officer's decision to exhaust his administrative remedies." (DE 17 at 17-18; *see also* DE 24 at 3-4.) Even if, as Defendants argue, Plaintiff did not pursue an appeal of the June 3, 2016 Class III misconduct guilty finding,[6] and even if this grievance does mention a "contraband removal notice," (DE 22 at 77-78), and even if Plaintiff's verified amended complaint alleges that Defendant Lamb "did not report" certain items, *the verified amended complaint does not mention the May 27, 2016 misconduct ticket*.

In other words, the import of Plaintiff's May 27, 2016 claim is that Defendant Lamb's impetus for tearing the room apart was not a belief that

---

[6] The parties dispute whether Plaintiff appealed the June 3, 2016 finding in accordance with MDOC PD 03.03.105 ("Prisoner Discipline"), effective April 9, 2012. (*See* DE 17-4.) On one hand, Defendants present the affidavit of Kimberly Napier (JCF warden's administrative assistant/litigation coordinator), who attests that she has "caused a search of Class III [misconduct] appeals filed at JCF for the relevant time period, and Plaintiff has not filed an appeal of his guilty finding of the May 27, 2016 misconduct for 'Contraband.'" (DE 17-5 ¶ 5.) On the other hand, although stated in an unverified response, Plaintiff claims he appealed the June 3, 2016 finding but that Assistant Deputy Warden Floyd "failed to adjudicate an appeal of the misconduct ticket . . . ." (DE 22 at 9-11, 30.) In support of his argument, Plaintiff notes that Hearing Officer J. Pazitka's explanation includes the phrase, "Hold for appeal." (DE 22 at 10, 29.)

contraband existed; rather, it was in retaliation for Plaintiff's earlier filed grievances, namely JCF-16-01-0221-19c.  As Plaintiff asserts in his unverified response, Defendant Lamb wrote the misconduct ticket "after he had tor[n] up the Plaintiff's room," and the officer "is not allowed to write a ticket in retaliation." (DE 22 at 11.)  Furthermore, Plaintiff draws a distinction between *tearing up Plaintiff's legal papers in retaliation for previously filed lawsuits and grievances* and *receiving a misconduct ticket for possession of scratched padlock and cardboard material (contraband)*.  As Plaintiff contends, "the documents [Defendant Lamb] tore up had nothing to do with the ticket."  (DE 22 at 13.) Moreover, the Court notes that Grievance Identifier JCF-16-06-1051-17G was denied at Step I, but not on the basis that it presented a "non-grievable" issue, such as a hearing officer's decision, and not on the basis of failure to appeal a hearing officer's decision.  *See* MDOC PD 03.02.130 ¶ F.

### f.    Conclusion

In sum, Plaintiff has alleged that the events of January 25, 2016 were in retaliation for previously filed lawsuits, such as *Scott v. Groves, et al.* (Case No. 5:14-cv-12123-JCO-EAS) (DE 15 ¶¶ 7-11), and he has further alleged that Defendant Lamb tore up Plaintiff's room on May 27, 2016, seemingly in retaliation for Plaintiff having filed JCF-16-01-0221-19c and resulting in the taking

or destruction of certain litigation-related documents (DE 15 ¶¶ 12-13).  The

retaliation and access to courts claims have been exhausted, and the Court should

therefore conclude that Defendants are not entitled to summary judgment on this

basis.

>    **3.    Defendants' argument that principles of collateral estoppel preclude Plaintiff's claim based on the May 27, 2016 allegations is unavailing.**

Defendants argue that the June 3, 2016 misconduct hearing "judgment,"

which upheld "Defendant Lamb's May 27, 2016 actions," collaterally estops

Plaintiff "from thereafter raising claims based on the underlying conduct."  In

particular, Defendants allege that, "[w]hat was before admittedly contraband,

became the loss or destruction of legal materials to justify an access to the courts

claim[,]" which, Defendants contend, Plaintiff "would have raised in the

misconduct hearing, if true."  Defendants argue that Plaintiff should be "precluded

from adding his post misconduct hearing claims to the grievance and this action."

(DE 17 at 19-20, DE 24 at 4-5.)  In response, Plaintiff contends that he "never

admitted to having contraband, and[,] in fact, stated at the hearing that the padlock

did not have any damage on it while in his possession."  He further contends that

"the scratches on the lock had to be done by Defendant Lamb," and explains that

he also "presented a hobby craft card to show that the cardboard was hobbycraft material."  (DE 22 at 16.)

Preliminarily, the Court notes that grievance JCF-16-06-1051-17G concerning the events of May 27, 2016 was dated May 30, 2016 and received at Step I on June 2, 2016.  (DE 17-2 at 10.)  Therefore, to the extent it fairly encompasses Plaintiff's retaliation and access to courts claims, it could not have been added "post misconduct hearing," as that hearing took place on June 3, 2016. (DE 17-5 at 4; *see also* DE 22 at 16.)  Further, while the parties dispute whether Plaintiff appealed the June 3, 2016 finding on the misconduct ticket, the Court observes that Plaintiff's purported appeal does mention "retaliation for filing complaints against MDOC's staff members . . . ."  (DE 17-5 ¶ 5, DE 22 at 9-11, 29-30.)

More importantly, this argument by Defendant focuses on the sustainability of Plaintiff's access to courts claim based on the events of May 27, 2016.  Albeit in a somewhat different context, this Court has previously observed that "engaging in the Class II and Class III misconduct appeals procedure set forth in MDOC PD 03.03.105 ("Prisoner Discipline") ¶¶ UUU-XXX, is distinct from the Step II and Step III grievance appeal process set forth in MDOC PD 03.02.130 ("Prisoner/Parolee Grievances") ¶¶ BB-EE, FF-GG[,]" and that "the misconduct

21

appeal procedure and the grievance procedure concern different subjects and terminate in different places." *Peltier v. Constance Derakhshandeh*, No. 2:15-CV-13717, 2016 WL 7733978, at *5 (E.D. Mich. Sept. 16, 2016), *report and recommendation of* Patti, M.J., *adopted sub nom. Peltier v. Derakhshandeh*, No. 15-CV-13717-DT, 2017 WL 106425 (E.D. Mich. Jan. 11, 2017) (Cleland, J.). As such, it seems that Plaintiff's failure to raise retaliation or access to courts as a defense to the misconduct charges should not estop him from pursuing those claims here, where Plaintiff's misconduct defense focused on the sources of the lock defacement and the propriety of his cardboard and gloves; he was presumably not required to allege or prove a retaliatory *motive* in his defense of the Class III misconduct for contraband, much less the status of papers which do not seem to have been the subject of the misconduct ticket.

### 4. Defendant Lamb is not entitled to qualified immunity as to Plaintiff's retaliation claims.

At this point, the Court must consider whether Plaintiff has stated a First Amendment retaliation claim upon which relief may be granted. "A retaliation claim essentially entails three elements:

    (1)    the plaintiff engaged in **protected conduct**;

    (2)    an **adverse action** was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and

(3)     there is a **causal connection** between elements one and two—
        that is, the adverse action was motivated at least in part by the
        plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (emphases added).

Defendants argue that they are entitled to qualified immunity.  (DE 17 at 21-

26, DE 24 at 5-7.)  "The Court applies a three-part test when determining whether

a government official is entitled to the affirmative defense of qualified immunity[:]

The **first** inquiry is whether the Plaintiff has shown a violation of a
constitutionally protected right; the **second** inquiry is whether that
right was clearly established at the time such that a reasonable official
would have understood that his behavior violated that right; **and** the
**third** inquiry is "whether the plaintiff has alleged sufficient facts, and
supported the allegations by sufficient evidence, to indicate that what
the official allegedly did was objectively unreasonable in light of the
clearly established rights."

*Higgason v. Stephens*, 288 F.3d 868, 876 (6th Cir. 2002) (quoting *Williams v.*

*Mehra*, 186 F.3d 685, 690 (6th Cir. 1999)).  Defendants qualified immunity

argument seems to focus on the first prong – that Plaintiff has not "shown a

violation of a constitutionally protected right . . .[,]" *Higgason*, 288 F.3d at 876, by

Defendants Lamb and Roark.  (DE 22 at 23-26.)

          a.     **Defendant Lamb is not entitled to qualified immunity**
                 **as to Plaintiff's retaliation claim based on the events**
                 **of January 25, 2016.**

As previously noted, Plaintiff has alleged that the events of January 25, 2016 were in retaliation for previously filed lawsuits, such as *Scott v. Groves, et al.* (Case No. 5:14-cv-12123-JCO-EAS).  (DE 15 ¶¶ 7-11.)  In particular, Plaintiff takes issue with the "tear up" of his cell.

The MDOC policy directive governing search and arrest provides that, "[t]o ensure the security of and safety within correctional facilities, prisoners and their living space within the facility will be subject to search on a regular basis." MDOC PD 04.04.110 ("Search and Arrest in Correctional Facilities"), effective June 9, 2015.  (*See* DE 17-8).  Relatedly, Defendant Lamb attests:

> I am often assigned to different units within the prison.  When I am assigned to a unit, my duties include searches of prisoner cells for contraband.  I have never conducted an unauthorized search of a prisoner or cell.  I always try to be professional during the searches, and place items back in their place after completing the search.  I have never 'torn up' a prisoner's cell.  I have never left a prisoner's cell/room in disarray.  I have never unlawfully taken, destroyed or damaged Plaintiff's, or other prisoner[s'], legal materials or personal property.

(DE 17-6 ¶ 6.)  Defendant Lamb further attests that he has never told Plaintiff or other prisoners "to stop writing complaints or grievances[,]" nor has he tried "to deter prisoners from filing lawsuits."  DE 17-6 ¶ 8.

Defendants' qualified immunity argument with respect to Plaintiff's January 25, 2016 claims against Defendant Lamb simply quotes the aforementioned policy

statement of MDOC PD 04.04.110 and Paragraph 6 of Defendant Lamb's affidavit.
Then, after a paragraph dedicated to the same-day claims against *Defendant Roark*,
it concludes, "Defendant Lamb is entitled to governmental immunity on this
claim." (DE 17 at 23-24.) Oddly, Defendants generally recognize certain
paragraphs of Plaintiff's amended complaint as alleging that Defendant Lamb
retaliated on January 25, 2016 for Plaintiff having filed lawsuits – in other words,
recognizing Plaintiff's claim that he engaged in protected conduct and was
subjected to an adverse action motivated by such conduct (*see* DE 17 at 6, DE 15
¶¶ 7-8; *see also* DE 17 at 21, DE 15 ¶ 15) – yet, other than citing MDOC PD
04.04.110's policy statement and a paragraph of Defendant Lamb's affidavit in
which he generally attests to "never" having done certain things, Defendants only
specifically address causal nexus as to Defendant Roark (*see* DE 17 at 23-24, DE
17-6 ¶ 6).

By contrast, Plaintiff's qualified immunity argument takes issue with
Defendant Lamb's affidavit, references ¶¶ 7-8, 10 and 11 of the verified complaint,
claims "Defendant Lamb is only using the rules to attempt to cover up his
retaliatory acts[,]" and proceeds to address the three elements of a First
Amendment retaliation claim. (*See* DE 22 at 18-23.) In fact, within his adverse

action discussion, Plaintiff references and provides examples of legal documents and books which were allegedly torn up.  (*See* DE 22 at 21, 27, 63-75.)

Defendants do not further address their original qualified immunity argument in their reply, as, with respect to the January 25, 2016 claims, they only focus on Defendant Roark and, again, conclude, "Defendant Lamb is entitled to governmental immunity on this claim."  (*See* DE 24 at 6).  Defendants not having satisfied "the initial burden of proving that no genuine issue of material fact exists" with respect to a First Amendment retaliation claim as set forth in *Thaddeus-X*, 175 F.3d at 394, Defendant Lamb is not entitled to summary judgment on Plaintiff's retaliation claim concerning the events of January 25, 2016.  *Stansberry*, 651 F.3d at 486 (internal quotations omitted).

> **b.    Plaintiff has not stated a claim upon which relief may be granted as to Defendant Roark and the events of January 25, 2016.**

Plaintiff's verified amended complaint alleges that Defendant Roark responded to Plaintiff's complaints by stating that "Defendant Lamb is just doing his job[,]" and he (Roark) "was not getting in the way of an officer doing his job." (DE 15 ¶ 9.)  Plaintiff elaborates on this allegation within his un-notarized "affidavit."  (DE 22 at 42 ¶ 2.)

26

Defendants' briefing is not a model of clarity.  It seems to the Court that Defendants may be arguing Roark's entitlement to qualified immunity with respect to the January 25, 2016 claims, perhaps on the basis that Plaintiff has not satisfied the first prong - showing "a violation of a constitutionally protected right . . . ." (DE 17 at 21-24; *Higgason*, 288 F.3d at 876.)  To this end, the Court notes Defendant Roark's attestation that:

> In this case Plaintiff complained to me that Defendant Lamb was tearing up documents and property in his cell, and wanted me to stop him.  I told him Defendant Lamb was just doing his job.  I know Defendant Lamb and I don't believe he would be down there tearing up your papers.  I am not authorized to oversee my peers.  However, if I did see Defendant Lamb tearing up papers I would be obligated to report it and would do so.

(DE 19-1 ¶ 6.)  Defendant Roark further attests that "[a]t no time did I ever retaliate against Plaintiff or make any inappropriate remarks or comments, directly or indirectly, to him; and would not do so as to Plaintiff or any other prisoner." (DE 19-1 ¶ 7.)

Significantly, where a defendant's only role in a lawsuit involves "the denial of administrative grievances or the failure to act . . . [he or she] cannot be liable under § 1983."  *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).  Liability under 42 U.S.C. § 1983 "must be based on more than respondeat superior, or the right to control employees."  *Shehee*, 199 F.3d at 300.  It "must be based on active

unconstitutional behavior and cannot be based upon 'a mere failure to act.'" *Id.* (quoting *Salehpour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir.1998), cert. denied, 526 U.S. 1115 (1999)). Thus, to the extent Plaintiff intended to bring a First Amendment retaliation claim against Defendant Roark for the events of January 25, 2016, Paragraph 9 of the amended complaint fails to state such a claim.

Plaintiff argues that Defendant Roark had a "duty" to enforce the MDOC's "rules, regulations, policies, and procedures" or to maintain "order"—as set forth in the MDOC Employee Handbook—such as by stopping Defendant Lamb from violating a rule or tearing up Plaintiff's legal property or to investigate. (DE 22 at 23-25, 61.) This appears to be based on the Supreme Court's direction with regard to the Fourteenth Amendment that "state law may create enforceable liberty interests in the prison setting." *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 461 (1989). Here, although Plaintiff reference the Fourteenth Amendment, it is clear that his complaint is based upon an alleged violation of his First Amendment right against retaliation. (DE 15 ¶¶ 1, 15, 17, 19.) As the Supreme Court has noted, "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510

28

U.S. 266, 273 (1994) (quoting *Graham v. Connor,* 490 U.S. 386, 395 (1989)).

Thus, the Court need not address whether these four paragraphs of Plaintiff's

amended complaint allege a claim based upon the Fourteenth Amendment.

> **c.    Defendant Lamb is not entitled to qualified immunity as to Plaintiff's retaliation claim concerning the events of May 27, 2016.**

Plaintiff alleges in his verified amended complaint that Defendant Lamb's

May 27, 2016 "tear up" of Inmate Robinson's and Plaintiff's rooms was in

retaliation for Plaintiff "writing complaints," which this Court assumes to be

grievances, such as JCF-16-01-0221-19c.  (DE 15 ¶¶ 12-13.)  In response,

Defendant Lamb attests:  "On May 27, 2016 Plaintiff was in possession of

contraband.  I took the contraband into possession and gave Plaintiff a Contraband

Removal Record Sheet and a Class III Misconduct Report for contraband that was

removed from his area of control in cell G-32.  I did not take a 'house' from

Plaintiff's cell."  (DE 17-6 ¶ 7.)

Defendants' qualified immunity argument with respect to Plaintiff's May 27,

2016 claim(s) against Defendant Lamb does not specifically address the retaliation

claim; instead, it specifically addresses the access to courts claim.  (*See* DE 17 at

25-26, DE 24 at 6-7).  On the other hand, Plaintiff's qualified immunity argument

responds in defense of his retaliation claim, going so far as to cite *Thaddeus-X v.*

*Blatter*, 175 F.3d 378 (6th Cir. 1999) and *Bell v. Johnson*, 308 F.3d 594, 605 (6th

Cir. 2002) ("Bell's evidence shows that the defendants twice left the plaintiff's cell

in disarray, confiscated his legal papers without returning them . . .").  (*See* DE 22

at 22.)  The law does not grant qualified immunity to a law enforcement officer

who retaliates against a prisoner for exercising his First Amendment rights.

Plaintiff here has demonstrated, through verified allegations, that there is a genuine

issue of material fact as to whether such retaliation occurred here.

Defendants have not satisfied "the initial burden of proving that no genuine

issue of material fact exists . . . ."  *Stansberry*, 651 F.3d at 486 (internal quotations

omitted).  As such, Defendant Lamb is not entitled to summary judgment on

Plaintiff's retaliation claim concerning the events of May 27, 2016.

> **5.    Plaintiff has not stated an access to courts claim against Defendant Lamb concerning the events of May 27, 2016 upon which relief can be granted.**

As noted earlier, the alleged facts underlying Plaintiff's claims occurred

primarily on two different dates.  It appears that Plaintiff's access to courts claim is

brought against Defendant Lamb with respect to the events of May 27, 2016 and is

encapsulated as follows:

> 12.    Plaintiff filed a grievance against Defendant Lamb for destroying his legal property, and on 5/27/2016 Defendant Lamb came to G-Unit and went to inmate Robinson's room and asked him if he was the same Robinson that had witness [sic]

against him in a grievance wrote by Scott, and when Robinson
said yes, he was told to step out of his room, and Defendant
Lamb tore up the room.

13.     On the same day of 5/27/2016 when Defendant Lamb left
        Robinson's room, Defendant Lamb came to Plaintiff's room
        and told Plaintiff that he had told him to stop writing
        complaints, and that if he thought that writing one against him
        would change anything that Plaintiff was wrong, and told
        Plaintiff to step out of the room.  Defendant Lamb then tore the
        room apart and again, he tore up a lot of legal motions and
        documents.  He took some legal documents and lots of
        Plaintiff's hobbycraft items which he did not report, and did not
        return.  Some of documents which were taken or destroyed
        have prejudice Plaintiff's litigation against a Dr. Hutchinson.
        The documents cannot be replicated because they were
        provided by inmate Billops, 139701; he is now deceased and
        the MDOC will not allow Plaintiff to obtain Billops medical
        file.

(DE 15 at 4-5.)  Then, Plaintiff's allegation that "Defendant Lamb  denied Plaintiff

his right to access the Court when he destroyed and seized legal materials[,]" is

further described as follows:

18.     Defendant Lamb prejudice [sic] Plaintiff with a litigation-
        related detriment which he can no longer meaningfully litigate
        against Dr. Hutchinson.  The documents which Defendant
        Lamb destroyed and seized cannot be replicated because they
        were provided by inmate Billops, 139701; he is now deceased
        and the MDOC will not allow Plaintiff to obtain Billops
        medical file.

19.     As a direct and proximate result of the Defendants' foregoing
        conduct, Plaintiff has been grievously deprived of his First and
        Fourteenth Amendment right to be free from vindictive
        retaliation for exercising his rights as alleged above.  Plaintiff

> therefore seeks economic and non-economic, compensation, presumed, exemplary, punitive, and nominal damages.

(DE 15 at 6.)

Prisoners have a fundamental right of access to the courts.  *Bounds v. Smith*, 430 U.S. 817, 821 (1977).  To establish a denial of access claim:

> [the named plaintiff *must identify* a *nonfrivolous*, *arguable*, underlying claim . . . .  It follows that the underlying cause of action, whether anticipated or lost, is an element that *must be described in the complaint*, just as much as allegations must describe the official acts frustrating the litigation. It follows, too, that when the access claim (like this one) looks backward, the complaint must identify a remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought. There is, after all, no point in spending time and money to establish the facts constituting denial of access when a plaintiff would end up just as well off after litigating a simpler case without the denial-of-access element.

*Christopher v. Harbury,* 536 U.S. 403, 415 (2002) (emphasis added).  To meet this 'actual injury' requirement, a plaintiff must show that the actions of the prison officials "hindered . . . [the prisoner's] efforts to pursue a *nonfrivolous* legal claim."  *Lewis v. Casey,* 518 U.S. 343, 343 (1996) (emphasis added).  Further, "the injury requirement is not satisfied by just any type of frustrated legal claim."  *Lewis,* 518 U.S. at 354.  The right is limited to safeguarding prisoners' ability "to attack their sentences, either directly or collaterally, and in order to challenge the conditions of their confinement."  *Id.* at 355.  Dismissal is appropriate where a prisoner fails to allege a *specific, litigation-related detriment* resulting from the

32

prison official's conduct. *Pilgrim v. Littlefield,* 92 F.3d 413, 416 (6th Cir. 1996) (emphasis added).

Defendants argue that Defendant Lamb is entitled to qualified immunity with respect to the May 27, 2016 access to courts claim against him. (DE 17 at 25-26.) In particular, Defendants contend that Plaintiff has failed "to show any injury or any past, present or future hindering of his ability to access the courts." Defendants assert that the only injury asserted by Plaintiff is "the inability to obtain the medical records of a deceased inmate," and that the "MDOC will not allow Plaintiff to obtain this deceased inmate's file[,]" or "to re-obtain this alleged evidence[,]" and that he could obtain these documents via a discovery request, a court order, or a subpoena. (DE 17 at 26, DE 24 at 6.) Moreover, Defendants reply that Plaintiff "admits that he is still litigating a medical claim regarding his hepatitis . . . ." (DE 24 at 2.)

The Court should conclude that Plaintiff's complaint does not state a claim of denial of access to courts, because "the underlying cause of action" has not been described with the requisite specificity. *Christopher*, 536 U.S. at 415. Similar to a legal malpractice action, "[e]ssentially, a claim for denial of access to the courts has unique pleading requirements: a plaintiff must plead a case within a case, alleging the law and facts sufficient to establish both the interference with his

access to the courts, and the *non-frivolous* nature of the claim that was lost."

*Brown v. Matauszak*, 415 F. App'x 608, 612 (6th Cir. 2011) (emphasis added).

The Sixth Circuit continued:

> Although Rule 8 does not constitute a "hyper-technical, code-pleading regime," it "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal,* [556 U.S. 662, 678-679] (2009).  A complaint does not "suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Id.* at [678] (quoting [*Bell Atlantic Corp. v.*] *Twombly,* 550 U.S. [544] at 557 [(2007)]).  While at the pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice," *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 . . . (1992), it is still necessary to include some "well-pleaded factual allegations" to support the claim.  *Iqbal,* [556 U.S. at 679].

*Brown*, 415 F. App'x at 613.  Here, although Plaintiff's amended complaint does mention *Scott v. Groves, et al.* (Case No. 5:14-cv-12123-JCO-EAS), he does so in the context of his retaliation claim.  (*See* DE 15 ¶¶ 8, 11.)  Moreover, Hutchinson is not a defendant in either that case or in the instant lawsuit.  Instead, Plaintiff's litigation against Hutchinson, as described in the amended complaint, is without detail (DE 15 ¶¶ 13, 18), leaving the Court without information to determine whether the lawsuit against Hutchinson is "non-frivolous."[7]  As such, the Court

---

[7] Plaintiff's unverified response argues that he has stated an access to courts claim against Defendant Lamb for destruction and seizure of "the legal materials that would have been used to bring a lawsuit alleging a denial of medical treatment[,]" and which argument Plaintiff partially supports with the notarized affidavit of George H. Billops (#139701).  (DE 22 at 13-16, 35-36.)  This heading suggests that the lawsuit against Hutchinson alluded to in the amended complaint has yet to

should conclude that Plaintiff has failed to state an access to courts claim against Defendant Lamb upon which relief can be granted.

### E.      Conclusion

Plaintiff has exhausted his administrative remedies as to his retaliation and access to courts claims against Defendants.  Defendant Lamb is not entitled to summary judgment as to Plaintiff's retaliation claims against him, whether based on the events of January 25, 2016 or May 27, 2016.  However, Defendant Lamb is entitled to dismissal of Plaintiff's access to court claim for failure to state a claim upon which relief can be granted.  In sum, Defendant Lamb should not be dismissed from this lawsuit, the retaliation claims against him still being in play.

---

be filed.  Likewise, his unverified response explains:  "Had Defendant Lamb not destroyed and taken the documents, Plaintiff would have sent a copy of them, along with a copy of his medical records . . . to Dr. Hutchinson and if he would have failed to treat Plaintiff, he would have 'correctly perceived all the relevant facts, understood the consequences of such facts, and disregarded those consequences.'"  (DE 22 at 15; *see also* DE 22 at 38-40.)  This allegation suggests that he may have received *better medical treatment* if he had had the Billops records in hand, but it is not at all clear, or indeed logical, how this would have led to a better outcome in prospective litigation against Dr. Billops, nor is it clear how "if he would have failed to treat Plaintiff, he would have 'correctly perceived all the relevant facts, understood the consequences of such facts, and disregarded those consequences[;]'" although Plaintiff also contends that the documents destroyed and seized included those "being used to litigate a case against a Doctor."  (DE 22 at 43 ¶ 4.)  In any case, it is his *pleadings* which determine whether his case is subject to dismissal under Rule 12, not his later characterization of them in his motion response.

As to the retaliation claim against Defendant Roark, Plaintiff has not stated a claim upon which relief may be granted regarding the events of January 25, 2016. As this is the only claim brought against Defendant Roark, he should be dismissed from this lawsuit.

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Fed. R. Civ. P. 72(b)(2) and E.D. Mich. LR 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.


Dated: June 29, 2017          s/Anthony P. Patti
                              Anthony P. Patti
                              UNITED STATES MAGISTRATE JUDGE


### Certificate of Service

I hereby certify that a copy of the foregoing document was sent to parties of record on June 29, 2017, electronically and/or by U.S. Mail.

                              s/Michael Williams
                              Case Manager for the
                              Honorable Anthony P. Patti

37